### EDWARDS v. SOUTHERN RY.

1. RAILROADS—HIGHWAYS—TRAVELERS.—Charge as to duty of traveler on highway to look out for the train and to use ordinary care in avoiding a collision, held to state the law correctly, and not to be a charge on the facts.
2. NEGLIGENCE—CONTRIBUTORY—PROXIMATE CAUSE—JURY.—Request to charge that stated facts would make contributory negligence, properly modified so as to leave that question to the jury, if they find such negligence to be the proximate cause of the injury.
3. RAILROADS—HIGHWAYS—CROSSINGS—CHARGE.—Request to charge what acts of defendant railroad are not a compliance with the statute as to signals at crossings, held to be on the facts.
4. IBID.—IBID.—Instruction that railroad is liable if its negligence was the prime or proximate cause of the injury at a public crossing, held to be correct.

Before TOWNSEND, J., Fairfield, February term, 1901. Affirmed.

Action by Derry P. Edwards, administrator of Jacob G. S. Edwards, against Southern Ry. Co. From judgment for defendant, plaintiff appeals.

*Messrs. A. S.* and *D. W. Douglass,* for appellant, cite: *As to the construction of sec. 1692 of Rev. Stat. and degrees of negligence:* 30 S. C., 228; 1 N. & McC., 420; 4 McC., 220; 1 McC., 510; Endlich Sts., sec. 75, 357; 50 L. R. A., 722; 65 N. W., 870; 24 L. R. A., 223; 58 S. C., 228. *As to the stop, look and listen rule:* 19 Am. & Eng. R. R. Cas., 353; 73 Pa., 504; 4 Ency., 1 ed., 946; 6 W. R., 851. *Whether negligence is proved to be present, is question for the jury:* 51 S. C., 460; 19 S. C., 29; 61 S. C., 563. *As to proximate cause:* 47 S. C., 112, 381.

*Messrs. Duncan & Sanders,* contra, cite: *These exceptions are too general:* 60 S. C., 429; 59 S. C., 162; 30 S. C., 107. *Illustrative or hypothetical requests are not on the facts:* 47 S. C., 488; 49 S. C., 496; 54 S. C., 299; 50 S. C., 363. *As to the care required of a traveler where there is statutory negligence:* 4 Ency., 1 ed., 914, 945; 2 Wood on R. R., 1518, 1519, 1520; 95 U. S., 617; 147 U. S., 383; 21 Am. St. R., 671; 26 Am. St. R., 585; 2 Thomp. on Neg., 426. *In the law there are no degrees of negligence:* Cooley on Torts, 2 ed., 751, 752. *Railway track is a warning of danger requiring travelers to look and listen:* 3 Wood on R. R., 1519; 103 Ind., 35; 8 Am. St. R., 804; 25 Mich., 295. *Appellant having failed to request a modification of respondent's request he cannot now complain:* 53 S. C., 93; 52 S. C., 444.

March 29, 1902. The opinion of the Court was delivered by

MR. JUSTICE POPE. Plaintiff's intestate was killed on a crossing on defendant's railroad on the night of the 10th day of March, 1900. The complaint is brought to recover $1,995 damages for defendant's negligence at common law

and also under the statute.    The evidence offered by defendant tended to show that there was a strict compliance by the defendant's agents and servants in giving the statutory signals from the 500 yards post continuously to the crossing of said railway company over the public highway where the deceased lost his life; that the head-light was on the engine; that the engineer reversed his engine and otherwise did his best to avoid the collision as soon as he discovered the wagon, drawn by a horse and a mule, loaded with fodder, upon which the plaintiff's intestate was seated; that after the accident it was discovered that the lines were firmly fastened to the wagon itself, and probably or possibly the deceased was asleep, and that the track of the defendant's railway was plainly visible seventy yards from such railway crossing.    While the plaintiff's testimony tended to show that the statutory signals consisted of only two or three quick. soundings of the whistle and no ringing of the bell. Both sides to the contention requested charges to the jury. A verdict was rendered by the jury in favor of the defendant.    After entry of judgment, plaintiff gave notice of appeal.    The grounds of appeal are as follows:

"I. That his Honor erred in charging defendant's first request, as follows: 'There is no rule of law which relieves or absolves a person from looking out for the train when he goes to cross the track, though no whistle may blow or bell ring.    The traveler must use ordinary care, and that involves the use of all his senses, and it is for the jury to determine whether, under the circumstances of each particular case, the traveler used reasonable care:' (1) because, in the absence of the statutory signals, it took away the right of plaintiff to recover unless his intestate, in addition to the want of ordinary care, was guilty of gross or wilful negligence at the time of the collision; and (2) because it was charging on the facts, instead of leaving to the jury whether, under the circumstances, a person should look out for the train when he goes to cross the track, though no whistle may blow or bell ring.

18—63

"II. That his Honor erred in charging the language quoted from Zeigler against the railroad, as follows: 'There is no rule absolving a person from looking for the train. He is bound to use ordinary care, and that involves a reasonable use of all his senses.' The question of whether a reasonable care was employed by plaintiff to prevent injury, is one for the jury alone, to be determined according to the facts of the particular case,' the case of Zeigler *v.* Railroad having been decided long before the act now appearing as sec. 1692 of the Rev. Stats. of 1893, had no application to this case, the error consisting in leaving to the determination of the jury whether plaintiff's intestate used 'ordinary' and 'reasonable' care, instead of leaving to their determination whether the deceased, in addition to a mere want of ordinary care, was guilty of gross or wilful negligence, at the time of the collision.

"III. That his Honor invaded the province of the jury by charging on the facts, in saying: 'There is no rule absolving a person from looking for the train;' whereas, he should have left it to the jury to determine whether or not, under the particular circumstances, a person should look for the train.

"IV. That his Honor erred in charging: 'There is no rule of law which absolves or relieves a person from looking out for the train when he goes to cross the track, though no whistle may blow or bell ring. The traveler must use ordinary care, and that involves the use of all his senses; and it is for the jury to determine whether under the circumstances of each particular case the traveler used reasonable care,' in that (1) he should have left it to the determination of the jury, not whether the traveler, under the circumstances, used 'reasonable care,' but whether, in addition to the mere want of ordinary care, he was guilty of gross or wilful negligence, and such gross or wilful negligence contributed to the injury; and (2) in that he should not have told the jury that ordinary care involves the use of all the senses, but should have left it for their determination, whether or not a failure

to use all the senses, under the circumstances, would be gross or wilful negligence.

"V. That his Honor erred in charging so much of defendant's second request as follows: 'One crossing a railroad track must use ordinary care to ascertain whether a train is approaching,' thereby making, in the absence of the statutory signals, the mere want of ordinary care equivalent to gross or wilful negligence, in contravention to sec. 1692 of the Revised Statutes of 1893.

"VI. That his Honor erred in charging so much of defendant's second request as follows: 'He' (the person injured) 'must use his faculties in proportion to the danger impending, and should look and listen before attempting to cross, provided you find that an ordinary prudent man, under the same circumstances, would do that,' instead of making the test whether or not only a grossly or wilfully negligent man would have failed to look and listen before attempting to cross.

"VII. That his Honor erred in charging the jury as follows, being the second request of the defendant, as modified by his Honor: 'One crossing a railroad track must use ordinary care'—that is, such care as a prudent person would use under like circumstances—'must use ordinary care to ascertain whether a train is approaching.' * * * 'He must use his faculties in proportion to the danger impending, and should look and listen before attempting to cross,' and I interline, provided you find that an ordinary prudent man under the same circumstances would do that, * * * 'and this care should be observed more especially by persons traveling in vehicles when crossing over railroad tracks,' * * * 'provided you find that an ordinary prudent person would do the same thing if about to cross,' thereby making the test, if the statutory signals were not given, what an ordinary prudent person would do, instead of what only a grossly or wilfully negligent person would have failed to do.

"VIII. That his Honor erred in charging the defendant's third request as modified, as follows: 'If a person should

attempt to cross a railroad track on a public highway, in his wagon, driving a team while asleep, and in that condition and traveling under those circumstances, is run over and killed—now the request has it he would be guilty of contributory negligence—I am not to say he would be guilty of contributory negligence, then I will say to you, if you find further that that negligence was the proximate cause of the accident—I don't mean accident, I mean injury alleged— then he would be deprived of recovering damages, and his representative would be deprived of recovering damages from the railroad;' the same being: (1) a charge on the facts, in that it informed the jury what state of facts would constitute negligence; (2) in that it deprived the plaintiff of the right to recover, in the absence of statutory signals, unless such state of facts showed, in the opinion of the jury, in addition to a mere want of ordinary care, gross or wilful negligence, and such gross or wilful negligence contributed to the injury.

"IX. That his Honor erred in charging defendant's fourth request, as modified, to wit: 'when the railroad company fails to give the statutory signals, this will not excuse the traveler from using ordinary care at a highway crossing;' in that it was obnoxious to sec. 1692 of Rev. Stats. of 1893, which provides, in the absence of the statutory signals, that, in addition to the mere want of ordinary care, the person injured at a public highway crossing, to prevent his recovery, must be guilty of gross or wilful negligence, and such charge was calculated to impress the jury that the defendant need show only the want of ordinary care on the part of the plaintiff's son, instead of gross or wilful negligence.

"X. That his Honor erred in charging defendant's fifth request as follows, to wit: 'The traveler is rigidly required to do all that prudence and care would dictate to avoid injury, and the greater the danger, the greater the care that must be used to avoid injury,' instead of adding, that if the statutory signals were not given, and the traveler is injured at a public highway crossing, this rigid rule does not apply;

but in that case it must appear that the traveler was guilty of gross or wilful negligence in addition to a mere want of ordinary care, and such gross or wilful negligence contributed to the injury.

"XI. That his Honor erred in refusing to charge, on the ground that it would be a charge on the facts, the last sentence of plaintiff's first request, to wit: 'Two, three or more blows of the whistle *before reaching the crossing* is not a compliance of the statute, nor is a few taps of the bell *before reaching the crossing,* but the ringing or whistling must begin 500 yards from the intersection of the public highway and be continued until the engine passes over the crossing,' because no number of blows of the whistle or taps of the bell *before reaching the crossing* could be a compliance; and as only one inference could be drawn from the given state of facts, his Honor should have charged the same.

"XII. That his Honor erred in charging the jury as follows: 'The charge is negligence against the railroad. If you find that the railroad company was negligent, and that negligence was the proximate and prime cause of the injury, and that the injury would not have been caused but for that, the railroad would be liable;' in that, if the statutory signals were not given, and plaintiff's son was killed at a highway crossing, by collision with defendant's train, it was not necessary to show that such negligence was the prime and proximate cause, but merely that such negligence contributed to the same, and his Honor should have so stated to the jury.

"XIII. That his Honor erred in charging, in connection with defendant's fourth request, the following: 'A man is not to fly into danger. He must use ordinary care and proper care, and if there is any special care required by the legislature or any other power and authority, one must use ordinary care himself, he must use proper care himself;' in that the same, being said in connection with the statutory signals, was calculated to impress the jury that the want of 'ordinary' care and 'proper' care was equivalent to gross or

wilful negligence, within the meaning of sec. 1692 of the Revised Statutes of 1893:"

In view of the many exceptions, and as all of them are directed against the charge of the Judge, we will embody it in this opinion.

"The plaintiff in this case alleges that he is the administrator of a deceased son, and alleges that son was killed by the negligence of the railroad company, the Southern Railway Company, and he claims damages for it. That is substantially the contention of the plaintiff. And the defendant railroad company denies this contention substantially—that is, that they killed him from negligence—and alleges that whatever injury resulted to him resulted from his own negligence. You have the original complaint and answer, and can read it all, if you desire. Now the plaintiff brings this action by the authority of this statute, which I read to you. When you hear the word 'statute' it means our legislature passed it. This statute I am going to read to you—this is the Lord Campbell's Act you have heard about (his Honor reads the act). That is the authority for bringing this action. It does not mean that the jury are going to give damages anyhow, because they bring action. The statute gives authority to bring such an action, and then, of course, the liability of the person sued depends upon the facts and circumstances of the case, under the law. The defendant denies that they were guilty of any negligence, and, on the contrary, allege in their answer that if the plaintiff's intestate—that is, the person who was alleged to have been killed, if he suffered the injury, if he was killed—it was due to his own negligence. Counsel on both sides have been kind enough to reduce to writing most of the law applicable to this case. They have put it in close, terse language, and in better language than I can give you. Therefore, I shall not have much to say to you outside of what I may say in connection with their requests to charge. I may say, however, that in all avocations of life a certain degree of care devolves upon us; that it makes no difference what you do,

we have to exercise a certain degree of care, and the law requires us to exercise such care as an ordinarily prudent person would exercise in doing the same thing. To illustrate: If I was going to shoe a kicking mule, I would be more careful when I got to his hind feet than I was with his fore feet. I would be careful with his fore feet, but when I got to his hind feet, I would be more careful. And when we work in conjunction with other people, whether we are corporations or individuals, the law requires care of everybody. A certain degree of care devolves upon us, and the legislature has passed some statutes requiring especial care on the part of the railroad, and it may be others; but as a railroad company is made the defendant here, I mention that specially. I will read the statute to you now, in this case. It is a statute in reference to blowing the whistle and ringing the bell. That is a statute which the legislature has passed requiring certain things to be done (his Honor reads statute). Now there is another statute which I will read to you in that connection. A statute means that the legislature has passed an act, and it is this (reading sec. 1692, Rev. Stats. 1893). Those are the statutes on the subject. The first I read gives authority to bring the action. The next imposes the duty on the railroad company in reference to ringing its bell or blowing its whistle. It is not required to do both. It is to blow the whistle within 500 yards of any public road or traveled place, or ring the bell. If they commence ringing the bell and ring it until the cars cross, it is sufficient. And our Supreme Court has decided if they omit to do that, ring the bell or blow the whistle, it is negligence. The Supreme Court has said that as a matter of law. Now, as I have said, gentlemen of the jury, a certain degree of care develops upon us all, and it does not follow, because a railroad company is negligent on any occasion where injury is done, that it is liable for the injury. It does not follow, necessarily, that because they are negligent that they are liable for the injury, because the party injured may be guilty of negli-

gence which becomes the direct and proximate cause of injury, and then the railroad is not liable. Of course, where they neglect to ring the bell or blow the whistle, and if that omission contributes to the injury, then they are liable, unless the party injured was guilty not only of ordinary negligence, but also gross negligence, that he didn't observe the least care. That is the provision of the legislature. Now, the plaintiff rests upon that; but, as I understand his complaint, he rests upon the common law negligence—I mean, negligence under our common law, beside that statute. He claims, as I understand the complaint, that they were negligent; that they were running the train negligently, and that he was killed by that negligence. The defendant in both cases claims that the plaintiff himself, not the plaintiff in this case, but the plaintiff's intestate, the person who was injured, that he was the cause of all the trouble—that he was guilty of negligence and that that was the cause of it all. Well, the law in reference to contributory negligence is simple enough, it seems to me. The great question is, where both parties are negligent, and there can be no contributory negligence unless both are negligent, the question is, which is the prime cause of the accident (accident is not the proper term)—which is the proximate cause of the injury which transpired. When we speak of contributory negligence, that implies, in the case of Cooper *v.* the Railroad Company, that there was negligence on the part of both. That is what the term means, as that case decided. Now the question is, the negligence of which causes it. Suppose the plaintiff's intestate was negligent, but suppose that the railroad was negligent, now which caused the injury? If the injury was done, it makes no difference if the defendant here, the railroad company, it makes no difference if they were negligent, if the plaintiff's intestate, who was alleged to have been killed, if his negligence was the proximate cause of his death, then, although the railroad company is negligent, it is not liable. And, on the other hand, it makes no difference, if the plaintiff's intestate was negligent, yet if

the negligence of the railroad company was the proximate and prime cause of the injury alleged, then the railroad company is liable. Now, that is the whole substance, briefly, of contributory negligence. There can be no contributory negligence unless there is negligence on both sides, and the meaning of the law is that the party claiming damages contributed to the negligence which the other party is accused of being guilty of. And then the great question arises for the jury to determine, whose negligence caused it? That is, which was the proximate or prime cause of it?

"Now, I will turn my attention to the requests to charge. The first request of the defendant (I take them in the order of the arguments). The first question is this: 'There is no rule of law which relieves or absolves a person from looking out for train when he goes to cross the track, though no whistle may blow or bell ring. The traveler must use ordinary care, and that involves the use of all his senses. And it is for the jury to determine whether under the circumstances of each particular case the traveler used reasonable care.' That is objected to on the part of the plaintiff as charging on the facts. I don't think so, and I so charge you, but I will read you at the same time from the case of Zeigler v. the Railroad, which I think is the same thing. 'There is no rule absolving a person from looking for the train. He is bound to use ordinary care, and that involves a reasonable use of all his senses. The question of whether reasonable care was employed by the plaintiff to prevent injury is one for the jury alone, to be determined according to the facts of the particular case.' Plaintiff's counsel: 'My objection was that it takes away from the plaintiff the right to recover unless there was gross negligence on the part of the deceased.' Defendant's counsel: This is not the request. It is the third you object to. The Court, continuing: Second. 'One crossing a railroad track must use ordinary care to ascertain whether a train is approaching. He must use his faculties in proportion to the danger impending, and should look and listen before attempting to cross, and this care should be

observed more especially by persons traveling in vehicles, when crossing over railroad tracks.' Now I will read that one again. 'One crossing a railroad track must use ordinary care to ascertain whether a train is approaching.' I charge you that part of it. I charge you that clause of it. That is a separate and distinct principle. 'One crossing a railroad track must use ordinary care'—that is, such care as a prudent person would use under the same circumstances—'must use ordinary care to ascertain whether a train is approaching.' Now I am going to read the balance of it and have something to say. 'He must use his faculties in proportion to the danger impending, and should look and listen before attempting to cross.' And I interline, 'provided you find that an ordinarily prudent man under the same circumstances would do that.' And then I read on, 'and this care should be observed more especially by persons traveling in vehicles when crossing over railroad tracks.' And I add, 'provided you find that an ordinarily prudent person would do the same thing if about to cross;' and with those qualifications I charge that, because the principle of law is correct. Under our Constitution it is very awkward sometimes to charge a proposition of law taken from general text books, because the law is different in our State from many others, and it is difficult to charge the law without trenching on the province of the jury.

"Now the third proposition: 'If a person should attempt to cross a railroad track on the public highway in his wagon, driving a team while asleep, and while in that condition, and traveling under those circumstances, is run over and killed, he would be guilty of such contributory negligence as would deprive him or his representatives of the right to recover any damages from the railroad company.' Now I am going to qualify that. 'If a person should attempt to cross a railroad track on a public highway in his wagon, driving a team while asleep, and in that condition, and traveling under those circumstances, is run over and killed'—now the request has it, he would be guilty of con-

tributory negligence. . I am not to say he would be guilty of contributory negligence; then I will say to you, if you find further that that negligence was the proximate cause of the accident—I don't mean accident, I mean the injury alleged— then he would be deprived of recovering damages, and his representatives would be deprived of recovering damages from the railroad.

"Now this is the fourth. Now, Col. Duncan, there is some word left out here, it seems to me. I will read it, and you listen: 'When the railroad company fails to give the statutory signals, this will not excuse the traveler from using ordinary care at a highway crossing, which directly contributes to his injury.' Defendant's counsel: Those last words should be stricken out, 'which directly contributes to his injury.' The Court, continuing: That means the ringing of the bell and blowing of the whistle, required by the statute, the one or the other. Both are not required. 'When the railroad company fails to give the statutory signals, this will not excuse the traveler from using ordinary care at a highway crossing.' I charge you that. A man is not to fly into danger. He must use ordinary care, whether the other party uses ordinary care and proper care; and if there is any special care required by the legislature or any other power and authority, every one must use an ordinary care himself; he must use a proper care himself.

" 'Fifth. The traveler is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger, the greater the care that must be used to avoid injury.' I charge you that. I believe that is all of the defendant's requests.

"The plaintiff requests me to charge you as follows: 'Under the statute of this State, it is required that the bell of the locomotive engine shall be rung or the whistle sounded, by the engineer or fireman, at a distance of at least 500 yards from the place where the railroad crosses any public high- way, and shall be kept ringing or whistling until the engine has crossed such highway. The statute requires the ringing

or whistling to be continuous over the prescribed distance. Two, three or more blows of the whistle before reaching the crossing is not a compliance, nor is a few taps of the bell before reaching the crossing, but the ringing or whistling must begin 500 yards from the intersection of the public highway and be continued until the engine passes over the crossing.' That I may not charge on the facts there—I am asked to say that two or three or more blows wouldn't be sufficient—I will say, if you were to find that two or three or more blows is a continuous blowing, then it would come up to the requirement of the statute. I am not to say to you what would be the requirement. I am not to say that two or three or more blows would be continuous or not. That is a matter for you to find. I simply say that the ringing must be continuous or the blowing continuous, and you must find from the facts whether it was so or not.

" '(2). If the bell is not rung or the whistle sounded at least 500 yards from the place where the public highway crosses the railroad, and is not kept ringing or whistling until the engine shall have passed such highway, then the failure to give the signals in this prescribed way is negligence in itself; and if a person is injured at such crossing, and it appearing that such signals were not given, it is presumed that the injury is the result of the failure to give the statutory signals.' The Court: Have you got authority for that presumption? I didn't notice that 'it is presumed.' The first part is correct, that that is negligence. Now, the latter part says that if they omitted to do it, it is a presumption that the negligence caused it. Plaintiff's counsel: Yes, sir; I refer you to Strother *v*. Railroad. The Court: Well, I charge you that.

" '(3). If the prescribed signals were not given—that is, if the bell was not rung or the whistle sounded at least 500 yards from where the railroad crosses the public highway, and was not kept ringing or whistling until the locomotive passed the crossing, and plaintiff's son was injured at such crossing, then the plaintiff would be entitled to recover

damages, unless his son was guilty of gross or wilful negligence, and such gross or wilful negligence contributed to the injury, as a direct and proximate cause thereof, or unless his son was guilty of a violation of the law.' I expect I had better read that again. I may have made some mistakes. 'If the prescribed signals were not given—that is, if the bell was not rung or the whistle sounded at least 500 yards from where the railroad crosses the public highway, and was not kept ringing or whistling until the locomotive passed the crossing, and plaintiff's son was injured at such crossing, then the plaintiff would be entitled to recover damages, unless his son was guilty of gross or wilful negligence, and such gross or wilful negligence contributed to the injury as a direct and proximate cause thereof, or unless his son was guilty of a violation of the law.' I charge you that. That is about the words of the statute.

" '(4). When the law speaks of an act of negligence as contributing to the injury, it means as a direct and proximate cause thereof, without which the injury would not have occurred.' I charge you that.

" '(5). Where a person is injured or killed at a point where the railroad crosses a public highway, and the statutory signals are not given, the burden is on the defendant company to show that the deceased or injured person knew of the approach of the train in time to have avoided the collision.' I charge you that.

" '(6). Where the railroad company pleads contributory negligence, the burden is on the railroad to prove it.' I charge you that.

" '(7). Although the statutory signals may have been given at the alleged public crossing where plaintiff's son is alleged to have been killed, but if the jury find from the evidence that the defendant operated its train carelessly, negligently and without due reasonable care, and plaintiff's son was injured or killed as a result of such carelessness, negligence or want of due reasonable care in operating the train, then the plaintiff would be entitled to damages, unless

his son was guilty of contributory negligence.' I charge
you that.

" '(8). The jury cannot award punitive damages, but
compensatory damages, such damages as the jury think pro-
portioned to the injury sustained. The jury is not limited
to pecuniary loss, but may take into consideration the com-
fort a parent would derive in rearing his child. The plaintiff
need not prove damages in dollars and cents.' I charge you
that.

"You do not understand, probably, what punitive dam-
ages are. There are two kinds of damages, generally. One
is punitive and the other compensatory. Punitive means
punishing; compensatory relates to paying the actual dam-
age. If you get your wagon broken up and it costs $10,
it is actual damages; if you get that, it is compensatory.
If it was done in a very wilful way, the destruction of the
property, in a wilful, reckless and malicious way, you might
get what is known as punitive damages; you might get $50
or $100, to punish the man and teach him not to do it any
more. This request speaks of punitive damages. The jury
cannot award punitive damages but compensatory dam-
ages—such damages as the jury think proportioned to the
injury sustained.

"Now, gentlemen, I will turn to the statute and read again
what the statute says about that, about the damages, if I
can find it. I read it a while ago, but you may have forgotten
it. It says this: 'In every such action the jury may give
such damages as they may think proportioned to the injury
resulting from such death to the parties respectively for
whose benefit such action shall be brought, and the amount
so recovered shall be divided among the before mentioned
parties in such shares as they would have been entitled to if
the deceased had died intestate and the amount recovered
had been personal assets of his or her estate.' The point is,
they cannot recover punitive damages in this case. The
charge is negligence against the railroad company. That is
a question for you entirely. If you find that the railroad

company was negligent, and that that negligence was the proximate and prime cause of the injury, and that the injury wouldn't have been caused but for that, the railroad would be liable.    If you find that the intestate, the party injured, was negligent, and that his negligence was the prime and proximate cause of the injury, and it wouldn't have taken place but for his negligence, you will find for the defendant. If you find for the plaintiff, say, 'We find for the plaintiff,' so many dollars, writing it out in full, and sign your name as foreman.    If you find the plaintiff is not entitled to recover, then the form of your verdict will be, 'We find for the defendant.'    You will be governed in this case by the preponderance of the evidence.    In the criminal court a great deal was said about proving cases beyond a reasonable doubt.    That is not the case in this Court.    This is the Court of Common Pleas.    You are to weigh the testimony, all the testimony, weigh it in the scales, and see which way the scales go, and that is the way the verdict goes—the preponderance, that is the rule which is to govern you.    Hand the original complaint and original answer to the jury. Gentlemen, when you write your verdict, you see this paper marked 'summons for relief;' turn it over and write it on the back of that.    Don't write it on the answer, don't write it on the one marked answer, write it on the back of the one marked summons for relief."

We will now pass upon the exceptions.    The *first, second, third* and *fourth* grounds of appeal may be considered together, as they relate to one matter in its different phases.

We must overrule these exceptions because the very section of the Revised Statutes, sec. 1692 (of the year 1893), especially recognizes it as a duty of a traveler on a highway which crosses a railroad that such traveler shall exercise ordinary care "* * * *Unless it is shown, that in addition to a mere want of ordinary care* * * *" It is natural and proper that a litigant in unfolding his case shall proceed step by step in his requests to charge; he cannot in one broad proposition embody all the phases of the law

he wishes to be comprehended in the Judge's charge. It is no unusual thing in this State for attorneys to insert in their requests to charge some proposition of law announced by the Supreme Court as sound in principle in the very language employed by the Court. We fail to see that there was a charge upon the facts by the Circuit Judge in his charge on this request; he was quite careful to avoid the semblance even of an interference on his part with the duty wisely confided under our Constitution to the jury. These exceptions are overruled.

5. We must overrule this exception, for it is evident on reading the charge of the Circuit Judge that he considered all the elements of the duty of an intestate who lost his life at a railroad crossing by a collision between himself and the railroad train, under and in view of the provisions of sec. 1692 of the Revised Statutes of 1893. "Ordinary care" on the part of the intestate was one of the duties imposed upon him by law in the case of such collision. Heavy duties are properly laid upon the railways in such collisions, and evidently the legislature looked upon the matter as one not only proper for the railway, but also upon the injured person as well, to exercise certain duties therein named.

6. We think the Circuit Judge was right in charging the jury as he is complained of having done in this exception. It is the duty of one crossing the railway to be on the alert to avoid a collision with a railway train at a crossing by the highway. He has the right, it is true, to travel a highway, but it is also true that railways have the right to use their track by its trains. If the railway must be on the alert at such crossings, so, also, must travelers be on the lookout. This exception is overruled.

7. For the same reasons just expressed, we must overrule this exception.

8. The request here complained of was properly guarded by the Circuit Judge in his charge. Hence this exception is overruled.

9. We see no error in the charge of the Judge. He was

again explaining the language used by the legislature in sec. 1692 of the Revised Statutes of 1893. This exception is overruled.

10. We see no merit in this exception. The charge of the Circuit Judge is unusually clear and full. This exception is overruled.

11. We do not see any error in the Circuit Judge declining to charge upon the facts; he had no right to do so. His general charge is, as before remarked, full and exhaustive. This exception is overruled.

12. The Circuit Judge was endeavoring to bring the minds of the jury to the full responsibility of the railway company to plaintiff's intestate on the occasion of their collisions. He wished the jury to see, under his explanation of the meaning of the terms "proximate cause," what duty the railway owed to the plaintiff's intestate, and how that duty if neglected by the railway would affect the result. The exception is overruled.

13. We see no error as in this exception imputed to the Circuit Judge. What the Judge said embodied the requirements of the law as to persons traveling on a highway across the track of the railway. We do not see that the language employed by the Circuit Judge in this connection could have misled the jury, as complained of by the plaintiff. This exception is overruled.

In conclusion, we will say that one of the reasons we have copied the charge into our opinion was to show how very careful the Circuit Judge was to guard the jury from any mistakes as to what the law was governing causes like the present. The charge itself, after all, is the best answer to any challenge of its conclusions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.