6687

## DRAWDY v. ATLANTIC COAST LINE RAILROAD.

RAILROADS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—One attempting to cross at a run a railroad track in front of a train running at a rapid rate of speed and so near the crossing as to make it evident that he could hardly have crossed in safety, and is killed by the engine striking him, is killed by his own gross negligence, as a proximate cause of the injury.

Before PURDY, J., Colleton, November, 1906. Affirmed.

Action by W. J. Drawdy, executrix, against Atlantic Coast Line R. R. Co.

From order of nonsuit, plaintiff appeals.

*Messrs. Griffin & Padgett, Howell & Gruber* and *C. C. Tracy,* for appellant.

The two first named firms cite: 58 S. C., 228; 53 S. C., 124; 47 S. C., 381; 47 S. C., 110; 75 S. C., 309; 59 S. C., 429; 5 S. C., 224; 63 S. C., 515; 25 S. C., 59; 19 S. C., 24;

30 S. C., 218; 45 S. C., 181; 9 S. C., 63; *Osteen* v. *Ry.,* 63 S. C., 494, 281; 59 S. C., 89; 72 S. C., 389.

*Mr. W. Huger Fitzsimons, T. M. Mordecai, Purifoy Bros.* and *P. A. Wilcox,* contra. *Mr. Fitzsimons* cites: 53 S. C., 597; 57 S. C., 249; 44 S. C., 315; 19 S. C., 23; 21 S. C., 466; 33 S. C., 198; 29 S. C., 318; 34 S. C., 450; 42 S. C., 120; 57 S. C., 435; 45 S. C., 278; 23 S. C., 289; 29 S. C., 96; 44 S. C., 315; 46 S. C., 215; 51 S. C., 301; 64 S. C., 316; 60 S. C., 17; 58 S. C., 494; 65 S. C., 430; 75 S. C., 390; 74 S. C., 419; 72 S. C., 237; 55 S. C., 483; 72 S. C., 264; 58 S. C., 247, 494; 55 S. C., 389; 72 S. C., 389; 76 S. C., 368; 34 S. C., 444; 57 S. C., 211; 7 S. C., 402; 114 U. S., 615; 80 Mo., 335; 7 Ency., 435, 436, 438; 65 S. C., 232; 63 S. C., 271.

October 12, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. M. A. Drawdy was killed by defendant's train while attempting to cross its track at Green Pond where the public road intersects the railroad; and the plaintiff as administrator brought this action to recover damages for his death. The judgment of the Circuit Court overruling a demurrer to the complaint was affirmed by the Court, 75 S. C., 308. The former appeal decided it was not *per se* such negligence as will prevent a recovery for personal injuries or death for one to undertake to cross a railroad track at a crossing after he has heard one blast of the whistle of the approaching train. The particulars of the accident as they appear in the complaint were held not to show on their face gross or wilful negligence, preventing a recovery under the statute which makes a railroad company liable when it fails to give the statutory signals, unless the person killed or injured was guilty of wilful or gross negligence.

When the case came on for trial, the Circuit Judge held the particulars of the accident developed by the evidence on

behalf of the plaintiff to show plainly the gross negligence
of Drawdy in attempting to cross the track in front of the
train contributed to his death as a proximate cause, and
granted an order of nonsuit.     The appeal is from this
order.

The deceased, M. A. Drawdy and his wife, Elizabeth
Drawdy, on their journey from Walterboro to Beaufort,
had to stop off and change cars at Green Pond.   They had
left home without breakfast, and while waiting for their
train, Drawdy left his wife in the station and went across
the track for the purpose of buying lunch at a store near by.
On his return he was struck and killed by a through train
not scheduled to stop at Green Pond.   There was evidence
that the train was running at a high rate of speed, but not
faster than the fast trains usually ran by; that there was
an embankment which for a part of the way would obstruct
Drawdy's view of the approaching train, on his return; and
some of the witnesses testified they heard one sharp blast of
the whistle at the usual place about five hundred yards dis-
tant, but did not hear the continued signal required by the
statute.   The statute provides if the continued signal pre-
scribed is not given, "the corporation shall be liable for all
damages caused by the collision  * * *  unless it be shown
that in addition to mere want of ordinary care, the person
injured or the person having charge of his person or prop-
erty was at the time of the collision, guilty of gross or wilful
negligence, or was acting in violation of the law; and that
such gross or wilful negligence or unlawful act contributed
to the injury."

The Court held in *Strother v. R. R. Co.*, 47 S. C., 375,
381, 25 S. E., 272: "The failure on the part of defendant's
servants to ring the bell or sound the whistle in the manner
provided by the statute was negligence *per se*.   When the
defendant violates the requirements of the statute as to ring-
ing the bell or sounding the whistle, and a person is injured
by its locomotive, while crossing a highway, street or
traveled place, it will be presumed that such negligence

caused the injury, unless the testimony shows that the injury was caused in some other manner, which was not done in this case." There was evidence that the crossing at Green Pond was a much frequented and traveled place, and plaintiff contended on the authority of *Risinger* v. *So. Ry., Co.,* 59 S. C., 429, 38 S. E., 1, that it was for the jury to decide whether the rate of speed at which the train was run by such a crossing was negligence. The remarks in the Risinger case were applied to the rate of speed through the town of Leesville, and we do not think there is good ground to extend the principle to an ordinary crossing merely because it is frequented; for the reason that as to mere crossings the statute has prescribed the precaution to be taken.

But the point is not material here, for under the case of *Strother* v. *Ry. Co., supra,* noncompliance with the signal statute is presumed to be the negligence which caused personal injury or death of a person injured or killed by the train at a crossing. As there was some evidence from which it might possibly be inferred that the continued signal prescribed by law was not given, the consideration of the appeal from the nonsuit must begin with the assumption that the negligence of the defendant was a proximate cause of the death of Drawdy. The inquiry then is whether there was gross negligence on the part of Drawdy, contributing to his death as a proximate cause. We think that no other than an affirmative answer is possible under the evidence offered by the plaintiff.

Drawdy went across the track to the store of either Welch or Boynton. These stores were opposite each other on the public road, not more than thirty feet from the track. G. S. Arnett, the only eye-witness of the accident, testified to these facts: He was standing between Boynton's store and the railroad, fifteen to twenty-five feet from the track. Drawdy passed him going towards Welch's store. A few minutes afterwards the witness heard a sharp blast from the approaching train at about five hundred yards

distance. It does not appear that he knew where Drawdy was at this moment. After a lapse of ten or fifteen minutes from the time he crossed the track, and after the blast of the whistle, Drawdy passed the witness at a run in the effort to recross the track in advance of the train. From his position when Drawdy passed him, the witness saw and heard the train, and knew the impossibility of making a safe crossing. It is manifest from the evidence that Drawdy had heard the signal, knew the train was approaching, and was running a race with it in his anxiety to get back to the station. Had he taken the slightest precaution to use his eyes or ears, he could not have failed to see how near the train was, how rapidly it was running, and how reckless would be the attempt to cross in front of it, for he passed the very spot where all these things were obvious to Arnett. It seems the train was so near when he passed Arnett that he was not able to go ten steps to the railroad before the locomotive came, for the position of the body indicated he did not have time to get in front of the train.

This is Arnett's account in his own language: "Q. You say Mr. Drawdy was running towards the railroad? A. Yes, sir. Q. How far was he from the railroad when he passed you? A. At whatever distance I was—I would say twenty to twenty-five feet. Q. Eight or ten steps? A. Yes, sir, it was ten steps; I am sure it was that far. Q. What happened after that; just describe in your own way? A. Well, he tried to, apparently, as he passed by me in such a rush, I looked around and seen he was trying to get across the railroad, and the train was so near at hand I watched him and seen there was going to be a collision, that he could not get across, and closed my eyes for a moment to keep from seeing him, and as quick as the engine passed opened them and stooped down and looked underneath the cars to see if I could see his feet on the other side, to see if he had got across, and I could not see it; and as quick as the train passed I rushed to the track and looked up it to see if I could see him, and I did see him by the track."

On the cross-examination he testified: "Q. While you were standing there you heard a train blow, didn't you? A. Yes, sir.   Q. You knew a train was coming, didn't you? A. I was expecting it.   Q. You heard it and knew it was coming? A. Yes, sir.   Q. Mr. Drawdy at that time was on the south side of you?   A. Yes, sir; he had passed me. Q. So when he got to you, if he had any hearing at all, he must have known the train was coming?   A. Well, I think so.   * * *   Q. Tell me why it was that you shut your eyes when you saw him going to that train?   A. To keep from seeing a collision.   Q. Why was it?   A. I saw the speed he was going and the speed the train was going.   Q. You knew it was impossible for him to cross first?   A. Yes, sir.   Q. Are you sure Mr. Drawdy got on the track? A. Yes, sir.   Q. Didn't you shut your eyes?   A. I don't know whether he get on the track or not; I seen the way he was going and that he was going to try to get across.   Q. Didn't you see he couldn't get on the track in front of that engine?   A. I didn't know whether he was going on or not; I seen there was going to be a collision."

In *Bamberg* v. *R. R. Co.*, 72 S. C., 389, 393, 51 S. E., 988, "the plaintiff testified she had already crossed the track thirty or forty yards from the place where she was injured; and there looked for the train, but did not see it; walked rapidly on, and, hearing no whistle or bell, undertook to cross a second time without looking again.   Under this proof it was for the jury to say whether the plaintiff's failure to look and listen constituted contributory negligence."   But in this case the Court says: "No doubt the failure to look and listen before going on the railroad track under some circumstances would be held to admit of no other inference than that the person injured was guilty of contributory negligence, and in such cases the Court would grant a nonsuit on the principles announced in *Jarrell* v. *Ry. Co.*, 58 S. C., 491, 36 S. E., 910."

This case is clearly of that character.   Its facts are not even analogous to those in the *Bamberg* case, and are very

different to those in *Osteen* v. *R. R. Co.*, 76 S. C., 368, where the verdict was allowed to stand only because of a doubt as to whether the plaintiff's negligence was a proximate cause of the injury. Here Drawdy knew the train was approaching, and very near the crossing; he had ample opportunity to observe how near it was and its speed; and if he had observed it at all, he would have seen the extreme hardihood of attempting to cross in front of it. The facts made out a case of gross negligence by the deceased as the proximate cause of the accident, at least as strong as was made in *Barber* v. *R. R. Co.*, 34 S. C., 451, 13 S. E., 630, where the plaintiff was nonsuited because he undertook to cross in front of a train which he knew to be approaching and near at hand.

The continued statutory signal could not have given Drawdy more complete warning than he had; and, therefore, it was not the failure to give the signal, but the neglect of the deceased to heed the notice he had of the near approach of the train, that was the proximate cause of his death.

The case is an illustration of that mysterious mental condition into which men sometimes fall, where the facts present to the senses the most urgent alarm of danger, and yet the mind either fails to receive the impresison, or, from confusion, loses control of itself and of the body.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.