### CHISOLM v. SEABOARD AIR LINE RY.

(114 S. E., 500)

1. RAILROADS—DUTY TO GIVE WARNING OF TRAIN'S APPROACH TO TRAVELED PATH, THOUGH NOT HIGHWAY OR TRAVELED PLACE.—Though a path across railroad tracks at a depot used by the public for several years in going to and from the depot was not such a highway, street, or traveled place as imposed on the railroad the duty of giving signals by bell or whistle, under Civ. Code 1912, § 3222, where it existed by its leave and license, the common-law duty of exercising due care to give reasonable signal of the train's approach was imposed on the company.

2. APPEAL AND ERROR—ASSUMED THAT NO SIGNAL GIVEN AT CROSSING WHEN THERE IS EVIDENCE WARRANTING SUCH FINDING.—Where there was testimony tending to prove that no signal was given of a train's approach to a traveled path across the tracks, it will be assumed that there was a failure to give reasonable and adequate warning for the purpose of an appeal raising the question whether the Circuit Judge erred as a matter of law in not granting motions for nonsuit, directed verdict, or new trial.

3. APPEAL AND ERROR—MUST BE ASSUMED IF NECESSARY TO SUPPORT GENERAL VERDICT THAT FAILURE TO GIVE SIGNAL AT CROSSING WAS WILLFUL.—Where it was alleged that railroad's failure to give reasonable and adequate warning of train's approach was wanton and willful, it must be assumed, if necessary to support a general verdict for plaintiff, that the jury found willfulness in failing to give such warning.

4. RAILROADS—ISSUE OF WILLFULNESS IN NOT GIVING SIGNALS HELD FOR JURY.—Evidence that a fireman of a train saw a pedestrian approaching the track and not looking towards the train, and that

· Note: On contributory willfulness as a defense against an action for personal injury, based on willfulness of defendant, see note in L. R. A., 1918D, 1195.

others realized the peril when he was some distance from the track, required the submission to the jury of the issue of willfulness in failing to give signals of the train's approach.

5. RAILROADS—CONTRIBUTORY NEGLIGENCE NO DEFENSE TO WILLFUL OR WANTON DELICT.—If the death of one struck by railroad train was caused by willful or wanton delict in not giving signals, contributory negligence is not a defense.

6. RAILROADS—COMMON-LAW DUTY TO GIVE SIGNALS.—A railroad grade crossing is in itself a warning of danger both to the trainmen and to travelers, and since a train has a right of way at crossings, it is the company's common-law duty to give such signals as may be reasonably sufficient, in view of the situation and surroundings, to put travelers on their guard.

7. RAILROADS—COMPANY AND TRAVELER UNDER MUTUAL DUTY TO KEEP LOOKOUT.—A railroad company and a traveler on a highway crossing are charged with the mutual duty of keeping a lookout for danger, and the degree of vigilance required is in proportion to the known risk.

8. RAILROADS—DUTY OF LOOKING AND LISTENING STATED.—A traveler before attempting to cross railroad tracks, must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances, and look and listen in both directions for approaching trains, if not prevented by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective.

9. RAILROADS—DUTY OF LOOKING AND LISTENING NOT ABSOLUTE.—The duty of a highway traveler to look and listen before crossing a railroad is not absolute, but may be qualified by attending circumstances.

10. RAILROADS—NEGLIGENCE IN FAILING TO LOOK AND LISTEN ORDINARILY FOR JURY.—It is ordinarily a question for the jury in the application of the standard of due care to say whether traveler's attempt to cross railroad without looking and listening effectively was excusable or amounted to negligence or willful misconduct.

11. RAILROADS—TEST OF TRAVELER'S NEGLIGENCE STATED.—On the question of culpability in crossing railroad without looking and listening, the true inquiry is whether he could, by the reasonable use of his senses in the performance of his duty to look and listen under the surrounding circumstances, have discovered the proximity of approaching train in time to avoid the accident.

12. RAILROADS—FACTS QUALIFYING DUTY TO LOOK AND LISTEN STATED.— The duty to look and listen before crossing a railroad may be qualified or the failure to do so excused, where looking and listen-

ing would not have availed to avert the injury, where the traveler enters upon the track under an express or implied assurance of safety, where there is some imminent danger or emergency not brought about by his own negligence, or where there are unusual or extraordinary conditions not created or controlled by the traveler himself, and especially if brought about by the railroad company, sufficient to distract and divert the attention of a man of ordinary prudence or self-possession from the duty of looking and listening effectively for an approaching train.

13. RAILROADS—NOT ASSUMED THAT PEDESTRIAN HARD OF HEARING WOULD NOT HAVE HEARD WARNING IF GIVEN.—If there was a failure to give due warning of a train's approach to a point where the track was crossed by a traveled path, it cannot be assumed, as a matter of fact, that if warning had been given, a pedestrian, though hard of hearing, would not have heard the warning in time to avoid going on the track.

14. RAILROADS—RIGHT TO ASSUME ONE WOULD NOT GO ON TRACK DOES NOT EXCUSE FAILURE TO GIVE SIGNALS.—The right of engineman on the lookout to assume that pedestrian in apparent possession of his faculties would not go on the track in front of an approaching train did not relieve him of his common-law duty of giving reasonable notice by signal of the train's approach to a crossing.

15. RAILROADS—PEDESTRIAN'S CONTRIBUTORY WILLFULNESS IN FAILING TO LOOK HELD FOR JURY.—Where a pedestrian approached railroad tracks at an angle a north-bound train was slowing down and stopping at a depot directly in his line of vision, and the bell was ringing, and men and women were moving about the train and station, and he may have been also confused and distracted from looking in another direction by shouts and gestures of the trainmen in a vain effort to call his attention to a south-bound train in front of which he stepped, he was not as a matter of law guilty of such conscious or reckless disregard of duty as charged him with contributory willfulness in failing to look in the direction of such train.

NOTE: On the question as to what amounts to gross or willful negligence within a statute requiring railroad company to give signals at crossings, see note in 21 L. R. A. (N. S.), 440.

The question of failure to give customary signals as excusing nonperformance of duty to look and listen before crossing railroad track, is discussed in a note in 3 L. R. A. (N. S.), 391.

At what crossings signals of trains are required to be given, see note in 16 L. R. A., 119.

Before PRINCE, J., Hampton.   October, 1921.   Affirmed.

Action by Milton M. Chisolm, as Adm'r of J. W. Walker, deceased against the Seaboard Air Line Ry.   Judgment for plaintiff and defendant appeals.

*Messrs. Harley & Blatt and Randolph Murdaugh,* for appellant, cite: *Verdict should have been directed:* 106 S. C., 123; 94 S. C., 143; 58 S. C., 491. *Gross negligence not to look for trains:* 94 S. C., 145; 72 S. C., 389; 76 S. C., 368. *Speed not negligence:* 29 S. C., 318; 7 S. C., 402; 34 S. C., 451. *Proximate cause:* 22 R. C. L., 110, 113; 39 A. L. R., 251; 126 A. L. R., 595; 127 A. L. R., 855; 95 U. S., 117; 105 S. C., 249; 109 Tenn., 331. *When a question for the Court:* 88 Md., 482; 78 Neb., 304; 56 Fla., 735; 58 N. J., 642; 22 Penn., 54; 52 S. C., 324; 76 S. C., 204; 77 S. C., 375.

*Messrs. H. O. Hanna and George Warren,* for respondent, cite: *Failure to give signals is negligence per se:* 106 S. C., 123; 101 S. C., 8; 97 S. C., 72; 93 S. C., 543.

October 12, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The plaintiff recovered a verdict for $5,000 in an action for damages on account of the alleged wrongful death of his intestate at a crossing near the defendant's depot in the town of Estill. . The defendant appeals upon three exceptions which assign error in the refusal of motions for a nonsuit, for a directed verdict and for a new trial, based upon the ground that the evidence was susceptible of no other reasonable inference than that the death of plaintiff's intestate was proximately caused by his own negligence, gross negligence, and willfulness.   The sole question raised by the appeal is whether the Circuit Judge erred as a matter of law in not granting the motions upon the ground stated.

The facts, which disclose, the setting and form the basis
of the controversy, stated as to all points in dispute most
favorably to plaintiff, are as follows: About 2:30 o'clock
in the afternoon of November 4, 1920, plaintiff's intestate,
J. W. Walker, a man of impaired hearing, about 58 years
of age, walking from his home on one side of defendant's
tracks to his store on the other, was struck and killed by
one of defendant's passenger trains at a point where a
traveled way crosses the tracks of the railroad company
near the ticket office and waiting room at the north end
of defendant's depot in the town of Estill. The depot is
on the west side of three parallel tracks running north and
south. About 150 feet to the east is a sidewalk or street
parallel with the tracks. From this sidewalk on the east
a path or walkway leads in a diagonal southwesterly di-
rection a distance of about 200 feet, to the railroad, cross-
es the three tracks and leads thence to a street upon the
west side. The path is the way of ingress to and egress
from the depot, and had been in use by the public for at least
7 years. One hundred and seventy-five feet to the north of
this path is a street crossing, and 290 feet to the south,
another street crossing. Approaching from the east the
first track is the main line, the next a passing track, and the
third a house track. Mr. Walker, the intestate, a resident
merchant familiar with the location, approached the rail-
road along the diagonal path from the east side, his face
toward the southwest. As he thus approached, two of de-
fendant's passenger trains, No. 2, going north and No. 1,
going south, were also approaching the crossing. On the
diagonal path facing toward the southwest, the intestate
was in position to see the train No. 2, coming from the
south, which was almost directly in his line of vision,
as it pulled in, slowed down, and stopped at the station with
bell ringing and steam escaping. Just about the time that
train stopped, the intestate stepped from the path upon

the main line track, and was struck by train No. 1, coming from the north, somewhat to the right and rear of · the intestate's line of advance, and running at a speed of 25 miles per hour. Just before intestate stepped upon the track, and when he was from 20 to 40 feet away from the track, the conductor, engineer, and express messenger on the slowly moving or standing train No. 2, shouted and waved to him. A young lady on the ground near by also called to the intestate. According to the engineer of train No. 2, the intestate was looking at his train. The fireman on train No. 1 saw the intestate approaching the track, that there was another train in front of him, and that he did not look toward the advancing No. 1. It is undisputed that after the fireman saw the intestate no whistle alarm was sounded for the purpose of warning him. There was testimony on behalf of plaintiff by persons in position to hear that no warning by bell or whistle of the approach of train No. 1 was heard. The regular passing point of these trains was Scotia, five or six miles from Estill. It is undisputed that at any point on the diagonal path for a distance of 200 feet the intestate by looking to the right could have seen a train approaching on the main line from the north, in which direction there was an open, unobstructed view for at least 859 feet, and that by looking in that direction the intestate could have seen the train that struck him in ample time to avoid injury.

The plaintiff's cause of action was predicated upon
1–4  alleged negligence and willfulness of the defendant
in operating train No. 1 at an excessive rate of speed, in creating a dangerous condition by causing two trains running in opposite directions to pass the crossing practically at the same time, and in failing to give due and timely warning by signal of the approach to the crossing of the train that struck the intestate. It does not appear from the record that the crossing involved was upon such a highway, street,

or traveled place within the terms and meaning of Section 3222, Civil Code 1912, as imposed upon the railroad the duty of giving the signals by bell or whistle required by the statute. *Sanders v. Railway Co.*, 97 S. C., 423; 81 S. E., 786. But there was evidence tending to establish that it was such a public crossing, existing by leave and license of the defendant, as imposed upon the defendant the common-law duty exercising due care to give reasonable warning by signal of the approach of trains. As there was testimony tending to prove that no warning by signal was given of the approach of the train that killed intestate, sufficient to require the submission of that issue to the jury, it will be assumed, for the purposes of this appeal, that the substantial delict of the defendant was the failure to give this reasonable and adequate warning. Since it is alleged that this delict was wanton and willful, and the verdict of the jury was a general one, it must further be assumed, if necessary to support the verdict, that the jury found the defendant guilty of willfulness in so failing to discharge its duty. *Calison v. Railway Co.*, 106 S. C., 123, 90 S. E., 260. The exceptions do not directly make the point that there was no evidence to support a finding of willfulness. We deem it proper to say in passing, however, that the testimony to the effect that the signals were not given, that the fireman of No. 1 saw the intestate approaching the track, not looking toward the fireman's train but toward the train in front of him, and that the trainmen on No. 2 realized the intestate's peril when he was 20 to 40 feet away from the track, was sufficient to require the submission of the issue of willfulness to the jury. The inquiry must therefore proceed upon the hypothesis that there was a willful or wanton disregard of the duty owed by defendant to give due and timely warning of the approach of train No. 1 to a public crossing.

If the injury was caused by a willful or wanton delict, under the well-settled rule, contributory negligence is not a defense. Contributory negligence as a ground for the nonsuit or the directed verdict must therefore go out of the case. *Callison v. Railway Co., supra.* Defendant's contentions are thus resolved into the alternative propositions: (1) That the sole proximate cause of the injury was the negligence of the intestate; or (2) that the willful or wanton misconduct of the intestate, combining and concurring with the willful default of the defendant contributed to the injury as a proximate cause. *Spillers v. Griffin,* 109 S. C., 78; 95 S. E., 133 L. R. A., 1918D, 1193. See note to this case, L. R. A., 1918D, 1195, as to contributory willfulness.

As pertinent to the solution of the questions thus presented, certain of the mutual and reciprocal rights and duties of railroads and travelers upon public crossings may be broadly stated in the form of general rules as follows:

1. A railroad grade crossing is in itself a warning of danger both to employees of the railroad in charge of trains and to travelers upon the highway; but, since a railroad train by reason of its character and momentum and the requirements of public travel by means thereof has the right of way at such crossings, it is the common-law duty of the railroad company to give such signals as may be reasonably sufficient, in view of the situation and surroundings, "to put individuals using the highway on their guard." *Murray v. Railroad Co.,* 10 Rich., 232, 70 Am. Dec., 219; *Kaminitsky v. Railroad Co.,* 25 S. C., 61; *Hutto v. Railroad Co.,* 61 S. C., 495; 39 S. E., 710.

2. A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both. *Edwards v. Railway,* 63 S. C., 288; 41 S. E. 458; *Johnson*

*v. S. A. L. Ry. Co.,* 163 N. C., 431, 79 S. E., 690, Ann. Cas., 1915B, 598; *Railway Co. v. Hansbrough's Adm'x,* 107 Va., 733, 60 S. E., 58.

3. On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective. This is merely a statement in the concrete of the fundamental principle of the law of negligence that—

"Ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding peril." 20 R. C. L., 113.

Applied, as it must be, in connection with the rule next stated, it is in accord with the settled law of this jurisdiction. *Mack v. Railroad Co.,* 52 S. C., 340, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Edwards v. Railway Co., supra; Bamberg v. Railroad Co.,* 72 S. C., 389, 51 S. E., 988; *Drawdy v. Railroad Co.,* 78 S. C., 374, 58 S. E., 980; *Osteen v. Railway Co.,* 76 S. C., 368, 57 S. E., 196; *Cable Piano Co., v. Railway,* 94 S. C., 143, 77 S. E., 868.

4. The duty of the traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances. The view taken in this state is that it is ordinarily a question for the jury in the application of the standard of due care to say whether the attempt of the traveler to cross without looking and listening effectively was excusable or culpable; that is, whether or not it amounted to negligence or willful misconduct. *Zeigler*

*v. Railroad Co.,* 5 S. C., 221; *Edwards v. Railway Co.,* 63 S. C., 271, 41 S. E., 458; *Bamberg v. Railroad,* 72 S. W., 392, 51 S. E., 988. The true form of the inquiry is: Could the traveler by the reasonable use of his senses in the performance of his duty to look and listen under the circumstances surrounding him have discovered. the proximity of the approaching train in time to avoid the accident? 28 R. C. L., p. 1041; *Bamberg v. Railroad, supra; Cable Piano Co., v. Railway, supra.*

5. The facts and conditions which may qualify the duty and excuse the failure to look and listen within the foregoing rules are usually: First, where looking and listening would not have availed to avert the injury; second, where the traveler enters upon the track under an express or implied assurance of safety, as where gates are open or signals are given by watchmen; third, the presence of some imminent danger or emergency, not brought about by the traveler's own negligence; fourth, the presence and influence of unusual or extraordinary conditions, not created or controlled by the traveler himself, and especially where such conditions are brought about by the railway company, which are sufficient to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train. 22 R. C. L., p. 1035; Elliott on Railroads, Vol. 3, § 1173, *Callison v. Railway Co., supra., Mack v. Railway Co.,* 52 S. C., 324, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Bamberg v. Railroad Co., supra; Douglass v. Railway Co.,* 82 S. C., 71; 62 S. E., 15, 63 S. E., 5; *Cooper v. Railroad,* 140 N. C., 209; 52 S. E., 932; 3 L. R. A. (N. S.), 391, 6 Ann. Cas., 71; *Lorenz v. Burlington, C. R. & N. R. Co.,* 115 Iowa, 37, 88 N. W., 835, 56 L. R. A., 753; *Grant v. Oregon T. & Nav. Co.,* 53 Wash., 678, 103 Pac., 1226, 25 L. R. A. (N. S.), 925.

Proceeding to the consideration of the questions 13–14 presented in the light of these general rules, can appellant's first proposition be sustained? That is, conceding that there was a willful failure on the part of the defendant to give due and timely warning by signals of the approach of its train to the crossing, should it be held as a matter of law that the sole proximate cause of the fatal injury was the intestate's own negligence? We think it is readily apparent that the evidence is not susceptible of that inference as the only reasonable conclusion. If, as we must assume, there was a failure, whether willful or negligent, to give due warning of the train's approach, it cannot be inferred as a fact that such failure did not contribute as a responsible cause to the injury. If warning by bell or whistle of the train's approach had been given, it cannot be assumed as a matter of fact that the intestate in approaching the track, although "hard of hearing," would not have heard the warning in time to avoid going upon the track. As a matter of law the right of the enginemen on the lookout to assume that the intestate in apparent possession of his faculties would not go upon the track in front of the advancing train did not relieve them of the common-law duty of giving reasonable notice by signal of the train's approach to the crossing. If because of the failure to give such notice the intestate went upon the track and was injured, however derelict he might have been in failing to exercise due care himself, it cannot be held that his own default was the sole proximate cause of the injury.

In order to bar a recovery, therefore, the appellant must sustain the second proposition, above stated, that the conduct of the intestate amounted to a wanton and willful default which contributed to the fatal injury as a proximate cause. There can be no doubt that the failure of the intestate to look to the right before going on the track contributed as a proximate cause to his death. Can it be held as a matter of law to have been such a con-

scious or reckless failure to perform his duty to look as will bar recovery? As pointed out in the foregoing statement of the general rules by which the conduct of the intestate is to be tested for fatal legal fault or delinquency, the duty of the traveler to look before entering upon a railroad crossing is not always an absolute one, but may be qualified by exceptional circumstances, among which are unusual conditions, especially where they have been brought about by the railroad company, of a nature calculated to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking in both directions for an approaching train. We are of the opinion that the evidence in the case at bar clearly discloses the presence of such conditions and their influence on the intestate's conduct. There was the approaching train No. 2, going north, coming into the station, slowing down and stopping directly in the line of intestate's vision; there was the ringing of the bell on that train, the well-intentioned, but vain, shouting and gesticulating of the trainmen; the movement of men and women, possibly passengers and others, about the train and station; and the practically simultaneous approach of the train from the opposite direction. That intestate's attention was absorbed by the movement of the train and of the people about the station; that his purpose was to cross the tracks without getting in the way of the train he saw; and that at the last and critical moment he may have been further confused and distracted from looking in another direction by the shouts and gestures of the trainman on train No. 2—would seem to be clearly inferable from the testimony. Applying to intestate's conduct in this situation the ultimate touchstone of the due care of the ordinary man prescribed by the settled rule in this state, in the light of the fact that Estill was not the regular passing point of the train, and of the consideration that intestate was entitled to some notice by signal of the approach of train No. 1, we incline

to the opinion that it was a question for the jury, and not for the Court to determine whether the intestate exercised in the circumstances the care of a man of ordinary prudence in going upon the track without looking in the direction of the train that struck him. But even if intestate's conduct could be held to amount to contributory negligence as a matter of law, it would seem clear that the facts do not warrant the Court in pronouncing the intestate's omission such a conscious or reckless disregard of his duty to look in the circumstances surrounding him as would charge him with contributory willfulness. Here there was no attempt to cross the track ahead of a train known to be approaching, as in *Barber v. Railroad,* 34 S. C., 451, 13 S. E., 630, *Drawdy v. Railroad Co.,* 78 S. C., 380, 58 S. E., 980, and *Griskel v. Railway Co.,* 81 S. C., 193, 62 S. E., 205. In the Cable Piano Company Case there was an entire absence of diverting influences attributable to conditions produced or controlled by the railway company, or of unusual conditions of any kind, which could in any wise have distracted the attention of the driver of the wagon from his duty to look before driving upon the crossing in plain view of the approaching train.

The issues were for the jury. If, as is sometimes intimated, unjust or mistaken verdicts are occasionally rendered by juries on questions like this, the remedy does not lie in usurpation by an appellate Court of the prerogatives of the jury, to whose unanimous judgment our law rightly commits the ultimate solution of these oftentimes difficult questions of mixed law and fact.

The judgment of the Circuit Court is affirmed.