12509

PINCKNEY v. ATLANTIC COAST LINE RAILROAD CO. *ET AL.*

(145 S. E., 135)

November, 1925.

*Mr. Nath. B. Barnwell,* for plaintiff-appellant, Frank D. Pinckney,

*Messrs. Octavius Cohen and Lide & McCandlish,* for defendant-appellant, Camp Manufacturing Company,

*Messrs. Hyde, Mann & Figg,* for defendant-appellant,

October 12, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This is an action by Frank D. Pinckney, as plaintiff, against the defendants, Atlantic Coast Line Railroad Company, Camp Manufacturing Company, A. J. Johnston, and G. J. Glaus, in the Court of Common Pleas for Charleston County, for alleged personal injuries caused the plaintiff by

a collision between a train of the said Atlantic Coast Line Railroad Company and an automobile driven by the plaintiff at a public crossing at St. Stephens, S. C., which public crossing was at the time of the collision completely blocked by a train of cars of the defendant, Camp Manufacturing Company, which stood on a siding belonging to the defendant, Atlantic Coast Line Railroad Company, the collision having occurred between 7:15 and 7:30, on the evening of December 19, 1922. The defendants, A. J. Johnston and G. J. Glaus, were engineer and fireman, respectively, on the engine of the said train of the Atlantic Coast Line Railroad Company which struck the plaintiff's automobile. The action was for both actual and punitive damages. The case was tried before Hon. J. W. DeVore, presiding Judge, and a jury, November, 1925, resulting in a verdict for the plaintiff, as follows: $2,500.00 actual damages and $1,000.00 punitive damages against the defendant, Camp Manufacturing Company, and $2,500.00 actual damages and $1,000.00 punitive damages against the defendant, Atlantic Coast Line Railroad Company, and nothing against the other defendants, A. J. Johnston and G. J. Glaus.

At the close of the testimony, the defendants made a motion for direction of a verdict, which was refused. After a verdict was rendered by the jury, motion for a new trial was made by the defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company. His Honor, Judge DeVore, issued an order refusing the motion as to actual damages, but set aside the verdict as to punitive damages. From this order all of the parties have appealed to this Court. The plaintiff has appealed from so much of the order as sets aside the verdict for punitive damages, and the defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company, have appealed for refusal to set aside the verdict as to actual damages.

The allegations of the complaint necessary for an understanding of the case are, in substance, that the Atlantic

Coast Line Railroad Company owns and operates a line of railroad passing through the Town of St. Stephens, in Berkeley County, this State, and that the defendant, Camp Manufacturing Company, is engaged in business in this State, operating, managing, and controlling a freight and logging railroad, which connects with the railroads of its codefendant, Atlantic Coast Line Railroad Company, at the said Town of St. Stephens; that the defendants, A. J. Johnston, resident of Florence, S. C., and G. J. Glaus, resident of Charleston, S. C., were engineer and fireman, respectively, on the engine of the Atlantic Coast Line Railroad Company, hereinafter referred to; "that on the 19th day of December, 1922, at or about the hour of 7 o'clock p. m., on a dark, rainy, misty and cold night, this plaintiff was driving his Ford automobile in and upon a public highway in the State of South Carolina, in the Town of St. Stephens, in Berkeley County of said State, when at a crossing of said highway with defendant, Atlantic Coast Line Railroad Company's, tracks his automobile was struck by a train of defendant, Atlantic Coast Line Railroad Company, his said automobile was completely demolished, and this plaintiff sustained a broken leg and broken arm, severe bruises to his entire body, a terrible shock to his entire nervous system, terrible pain and suffering, was required to remain in a hospital for about a month and subsequently to walk on crutches for about a month and incurred considerable bills for medical attendance and hospital care."

The plaintiff asked for damages in the sum of $25,000.00, and alleged that the injuries which he suffered were caused by the negligence, recklessness, willfulness and wantonness of the defendants in the following particulars:

"(a) Defendant, Camp Manufacturing Company, with the consent, acquiescence and approval of its codefendant, Atlantic Coast Line Railroad Company, had placed and kept a train of cars on a track of said Atlantic Coast Line Railroad Company and across the public highway and cross-

ing of said road, obstructing the crossing of said highway and said railroad unnecessarily and for an unreasonable length of time and without any safeguards, lights or warnings to the public of such obstruction—the said obstruction being in violation of the laws of the State and of the ordinances of the Town of St. Stephens, in which it occurred.

"(b) The train of Atlantic Coast Line Railroad Company was being run and operated by its said engineer A. J. Johnston and its said fireman G. J. Glaus at a high, excessive and dangerous rate of speed, in violation of law and of the ordinances of the Town of St. Stephens, through which it was passing.

"(c) The said train of Atlantic Coast Line Railroad Company was being operated by the said engineer and the said fireman without any proper or adequate lookout, safeguards, or warnings, and was being operated at and upon said crossing without giving any proper signals of its approach contrary to the common law, contrary to the statutes of the State, and contrary to the ordinances of the Town of St. Stephens.

"(d) The said train of defendant, Atlantic Coast Line Railroad, was allowed by its said engineer and fireman to proceed across said public crossing in the Town of St. Stephens on the said dark, rainy, misty night at the high and dangerous rate of speed without protecting the public at the said crossing by means of a flagman or otherwise."

The defendants, Atlantic Coast Line Railroad, A. J. Johnston, and G. J. Glaus, in their answer, admitted the formal allegations of the complaint, and also admitted that the defendants, A. J. Johnston and G. J. Glaus, were the engineer and fireman on the train referred to in the complaint, with the usual duties pertaining to said positions; that at the time and place mentioned in the complaint "the plaintiff was driving his automobile along the highway therein mentioned, and attempted to drive the same over and across a crossing of the defendant, Atlantic Coast Line

Railroad Company, and that the said automobile was struck by a train of the said defendant, Atlantic Coast Line Railroad Company, upon said crossing, and that the plaintiff then and there sustained a personal injury and his automobile was damaged." The remainder of the material allegations of the complaint these defendants denied.

They also set up the defense of contributory negligence, alleging:

"That whatever injuries were sustained by the plaintiff or damage done to his automobile at the time and place mentioned in said complaint, were due to and caused, in whole or in part, or were contributed to as a proximate cause thereof by the negligence, carelessness, gross negligence, wantonness and willfulness of the plaintiff himself, without which said injuries and damages would not have occurred."

The answer of the defendant, Camp Manufacturing Company, is similar to that of the other defendants, except with reference to the allegations concerning the defendants, Johnston and Glaus, admitted the formal matters alleged in the complaint, set up the defense of contributory negligence, and alleged that, "at the highway crossing where plaintiff's automobile was struck, there is a double track constituting the main lines of Atlantic Coast Line Railroad Company, and that the logging train of this defendant was not on either of the main lines of said Atlantic Coast Line Railroad Company, but was temporarily on a side track in the opposite direction from which the plaintiff was coming, having been placed thereon by permission of said Atlantic Coast Line Railroad Company; that said logging train was plainly visible to the plaintiff, and that he could have seen the same before he entered upon the railroad track by the ordinary use of his faculties; that there is ample space between the side track and the main line in which the plaintiff could have stopped his automobile"; but that the plaintiff "negligently and carelessly entered upon the main line track of Atlantic Coast Line Railroad Company in full view of the

logging train of this defendant, and negligently and carelessly failed to stop his automobile between the track on which the train was coming and this side track, and that the said negligence and carelessness of the plaintiff combined and concurred with the alleged negligence of this defendant as a proximate cause of the accident, resulting in plaintiff's alleged injuries, and without which it would not have occurred." This defendant further alleged that the conduct of the plaintiff in going on the said crossing under the conditions set out above was willful, wanton, and reckless.

EXCEPTIONS OF ATLANTIC COAST LINE RAILROAD CO.

In passing upon the exceptions of the Atlantic Coast Line Railroad Company, we shall consider the same under three principal divisions, as outlined by counsel for this appellant, namely: (a) Refusal to direct verdict; (b) error in the charge; and (c) refusal to grant a new trial.

As to refusal to direct verdict:

In the motion for direction of a verdict, this appellant, Atlantic Coast Line Railroad Company, based the motion, first, upon the ground that there was no evidence of negligence, willfulness, or wantonness on the part of the railroad company constituting the proximate cause of the injury; second, that it was shown conclusively that the alleged injury was due to an independent and intervening cause, the blocking of the track by the Camp Manufacturing Company; and, third, that the injury complained of was shown to have been caused by plaintiff's negligence and negligence so gross as to amount to willfulness, as the proximate cause thereof, in that the plaintiff did not use his senses of sight and hearing to prevent the collision.

Riding in the automobile with the plaintiff at the time he received the injuries alleged was Mr. D. B. Miller, who was killed in the collision. The action growing out of the death of Mr. Miller was tried in Richland County, resulting in a verdict for the plaintiff, administrator of the estate of the deceased, and the judgment entered thereon was affirmed

by this Court, reported in 140 S. C., 123, 138 S. E., 675. In the opinion in that case, written by the Chief Justice, the questions of law arising in the case at bar as to negligence, willfulness, intervening cause, and contributory negligence were fully discussed, and there is, therefore, no need for a further discussion of the law on those subjects here; the chief question for consideration here being whether the record discloses any testimony tending to show that the plaintiff's alleged injuries were caused as contended by the plaintiff, or that the only reasonable inference to be drawn from the testimony is that the injuries were caused in the manner contended by the defendants.

In the answer of the Atlantic Coast Line Railroad Company, ownership of the railroad tracks is admitted, and the location of the tracks is clearly shown. It also clearly appears from the evidence that the crossing in question is the main crossing in the Town of St. Stephens, connecting the principal and frequented business places of the town where people constantly travel. The accident happened after night between 7:15 and 7:30 on the evening of December 19, 1922, and there was testimony tending to show that the place was dark; that it was either raining at the time or had been raining, and some of the witnesses described the night as a "dark, misty night"; that there was no light of any kind at the crossing; that, while there was some testimony tending to show that there was a lantern on the cab of the engine of the Camp Manufacturing Company, there was also testimony tending to show that the same was some distance away from the crossing and furnished no light at the crossing; there were no gates at the crossing, and there was no flagman or any one there for the purpose of keeping watch or giving notice of danger to those traveling over the crossing, or to give notice that the crossing was blocked by the flat cars of the Camp Manufacturing Company, placed there with the permission and under the instruction and direction of the agent of the At-

lantic Coast Line Railroad Company, acting, it appears, within the scope of his agency. As was held in the *Miller case, supra,* ordinary prudence might require such a crossing as the one in question to be flagged at certain times, and persons kept there to give notice of danger, on account of the extraordinary danger of the place, and whether the surrounding circumstances required such precaution at the crossing in question here was a question for the jury, and we think his Honor, Judge DeVore, properly submitted the question to the jury. We are also of the opinion that, whether there were sufficient lights at the crossing, and whether under the circumstances the defendants should have had the place lighted, were questions for the jury.

As stated, it is admitted that, at the crossing in question, a highway passing through the principal business section of the town of St. Stephens and over and across the railroad of the defendant Atlantic Coast Line Railroad Company, where the said railroad company has three tracks, two main line tracks (called double tracks) and a pass or side track, where people constantly travel, was blocked by flat cars of the train of the defendant Camp Manufacturing Company, placed on the side track, the three tracks being close together, and that the blocking was done by the defendant Camp Manufacturing Company with the permission and under the instructions of the defendant Atlantic Coast Line Railroad Company, but the length of time the crossing was blocked was in dispute. Whether the crossing was blocked in violation of law, whether it was blocked an unreasonable length of time under the circumstances, and whether such acts on the part of the defendants brought about the alleged injury as the proximate cause thereof, were questions for the jury, properly submitted under clear instructions by his Honor, Judge DeVore. There was also testimony tending to show that the train of the defendant Atlantic Coast Line Railroad Company that struck and injured the plaintiff at the crossing approached

the crossing at a rapid rate of speed, without ringing the bell or sounding the whistle and without giving any notice or warning of the approach of the train. Whether this testimony was true was a question to be submitted to the jury.

There was also testimony to the effect that a row of trees on the right of way of the Atlantic Coast Line Railroad Company prevented the plaintiff from seeing the approach of the train that struck the automobile of the plaintiff; also that the headlight on the engine of this train was dim. Furthermore, it clearly appears from the transcript of record that, in going upon this crossing, approaching it from the side plaintiff approached it, it was necessary to go up a grade, which, according to witnesses for the plaintiff, prevented the lights on the automobile of the plaintiff from showing the flat cars on the pass track, and that he did not see the flat cars thereon until he was upon the main line. Upon discovering that the crossing was blocked by the flat cars on the pass track, and seeing that there was no way of getting across, the plaintiff undertook to back his automobile off of the crossing, but before he could do so was struck by a fast-going train of the defendant Atlantic Coast Line Railroad Company, which was running behind time and came suddenly upon the plaintiff, without any warning whatsoever, and without any knowledge of its approach, although plaintiff used his senses of sight and hearing to ascertain if there was any train approaching before going upon the crossing. According to our view of the case, there was not only testimony tending to show negligence on the part of the defendants, but wantonness and willfulness as well, which the jury might reasonably conclude was the proximate cause of plaintiff's injuries. His Honor, Judge DeVore, therefore, properly refused the motion of the defendant Atlantic Coast Line Railroad Company for a direction of a verdict made upon the ground that there was no evidence of negligence, will-

fulness, or wantonness constituting the proximate cause of the injury.

As to the second ground upon · which the motion for direction of a verdict was made by this defendant, that it was shown that the injury was due to an independent and intervening cause, the blocking of the track by the Camp. Manufacturing Company, his Honor, Judge DeVore, could not grant the motion on this ground, for the reason, as already pointed out herein, it clearly appears from the transcript of record that the crossing was blocked with consent and under the instruction and direction of the defendant Atlantic Coast Line Railroad Company.

■ The third ground upon which this defendant Atlantic Coast Line Railroad Company based its motion for a direction of a verdict was that under the evidence it conclusively appeared that the only reasonable inference was "that the injury was due to the plaintiff's negligence, and negligence so gross as to amount to willfulness, as the proximate cause thereof, in that the plaintiff, who was driving the automobile, did not use his senses of sight and hearing to prevent the collision."

Under the testimony in the case, to which we called attention in our discussion of the first ground upon which the motion for a direction of a verdict was made by this defendant, his Honor, the presiding Judge, properly refused the motion and submitted the issue presented to the jury.

Therefore the exceptions of the defendant Atlantic Coast Line Railroad Company, imputing error to the presiding Judge in refusing the motion for a direction of a verdict, cannot be sustained.

As to error in Judge's charge:

■ This defendant Atlantic Coast Line Railroad Company imputes error to his Honor, the presiding Judge, in charging the jury, at the request of Camp Manufacturing Company, as follows:

"Even if you find from the evidence that the defendant, Camp Manufacturing Company, was negligent or willful in obstructing the crossing, but that the defendant could not reasonably have anticipated that a collision such as occurred on this occasion would result from such obstruction, then I charge you that such obstruction was not a direct and proximate cause of the collision, although you find the same to be a remote cause, and your verdict must be in favor of this defendant."

In charging this request, his Honor, the presiding Judge, added:

"I charge you that, and in connection with it this: before you could find a verdict against that company you must find that the obstruction was the direct and proximate cause of the injury, if that be so, the plaintiff would be entitled to recover. If you find the obstruction was a remote cause, he could not recover."

We do not think this defendant was in any way prejudiced by his Honor thus charging the jury, and the exception is overruled. See *Miller case, supra.*

As to refusal to grant new trial:

The exceptions imputing error to his Honor, falling under this division, are as follows:

"1. The verdict was contrary to the manifest weight of the evidence.

"2. The verdict was contrary to the clear preponderance of the evidence, the only reasonable inference therefrom being—

"(a) Injury to plaintiff not direct and proximate result of any negligence of Railroad Company, and,

"(b) Only inference being injury through negligence of defendant, Camp Manufacturing Company."

The questions raised by these exceptions are disposed of under our discussion of the testimony in connection with the motion for direction of verdict. The exceptions cannot be sustained, and are, therefore, overruled.

### EXCEPTIONS OF CAMP MANUFACTURING COMPANY

As stated by counsel for Camp Manufacturing Company, this defendant's exceptions raise the following points :

"(1) The Court erred in refusing to direct a verdict for Camp Manufacturing Company, on the ground that there was no evidence of any negligence or willfulness on its part; (2) the Court erred in refusing to direct a verdict for Camp Manufacturing Company, on the ground that there was no evidence of negligence or willfulness on its part which was a proximate cause of plaintiff's injury, and that plaintiff's injury was due to an independent, intervening cause; (3) the Court erred in refusing to direct a verdict for Camp Manufacturing Company, on the ground that the evidence conclusively shows that the plaintiff was guilty of contributory negligence; and (4) the Court erred in the admission of certain testimony, and in refusing to grant Camp Manufacturing Company's motion for a new trial."

A brief reference to the testimony to which we have already adverted disposes of the first three points mentioned This defendant, according to testimony on behalf of witnesses for the plaintiff, corroborated in part by witnesses for defendants, blocked the crossing in question by placing and leaving thereon its train of cars in the nighttime, on a dark and rainy night (some of the witnesses described the occasion as "misty"), without any light at the crossing to warn the traveling public of the presence of the flat cars on the track, which could not be seen by plaintiff until after he got upon the main line, for the reasons appearing in testimony already adverted to herein, and keeping the crossing blocked for an unreasonable time and longer than permitted by law.

According to our view of the case, the questions raised by appellant, as set out by counsel under the three points mentioned, were under the testimony issues for the jury, which the presiding Judge submitted to the jury under proper instructions.

As to the fourth question raised under the appellant's exceptions, that the presiding Judge erred in the admission of certain testimony, the same must be decided against appellant's contention. The error imputed to his Honor here is in permitting the plaintiff to answer this question: "Q. If you had known these flat cars were there, would you have gone on the crossing?" to which question the plaintiff answered that he would not. While applying the rule strictly, the question was not permissible, we fail to see wherein the defendant was prejudiced, and the exception is, therefore, overruled.

The exceptions imputing error to the presiding Judge in refusing to grant this defendant's motion for a new trial is also overruled, for the reasons assigned in overruling the exceptions charging error in refusing the motion for direction of verdict.

### EXCEPTIONS OF PLAINTIFF

The plaintiff imputes error to his Honor, Judge DeVore, in setting aside the verdict as to punitive damage. From the order issued by his Honor in disposing of the motions for a new trial, it appears, and it is so stated, that if the jury had rendered a verdict for actual and punitive damages against the defendants, Johnston and Glaus, his Honor would not have disturbed the verdict. By this we assume that the evidence in the case, in the opinion of his Honor, was sufficient to warrant a verdict against all of the defendants for punitive as well as actual damages, with which view we fully agree; therefore, the defendants, Johnston and Glaus, engineer and fireman, respectively, on the train of the Atlantic Coast Line Railroad Company that struck the plaintiff's automobile, having been acquitted by the verdict of the jury, the question presented to us is, Do we find other evidence, independent of that against the defendants, Johnston and Glaus, to connect and hold the other defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company as to punitive damages?

Having already herein, in the discussions of the other questions presented by the appeal, called attention to the additional testimony tending to show wantonness, recklessness, or willfulness on the part of these defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company, we do not consider it necessary to again review the same in detail, and shall simply make a brief reference to the same here.

The Camp Manufacturing Company, as it clearly appears from the record, on the night in question, placed a train of cars on the highway and street crossing in the Town of St. Stephens, thereby blocking said crossing where the plaintiff received bodily injuries, and had his automobile completely destroyed by the striking of the same by a train of the defendant, Atlantic Coast Line Railroad Company, which train of cars of the Camp Manufacturing Company was placed on said crossing, with the consent and under the instructions of the Atlantic Coast Line Railroad Company. The night in question, according to the witnesses for plaintiff, was a dark "misty" night, and no lights appeared or were placed at the crossing, and neither was a flagman or guard placed there for the protection of those desiring to pass over crossing, although it was a place where many people constantly traveled; that, according to some of the witnesses, the said train of the Camp Manufacturing Company remained over the crossing and kept the same blocked for a long time—just how long the witnesses differed; some said ten minutes, some fifteen, and some twenty and so on, from which testimony it might be reasonably inferred that the train remained there an unreasonable length of time under the circumstances, blocking the said crossing, especially so when there was no light and no guard or flagman placed there.

It further appears from the testimony that there was a row of trees on the right of way of the defendant, Atlantic Coast Line Railroad Company, which, according to the testimony of some of the witnesses, obstructed the view of the

plaintiff as he approached the crossing and prevented him from seeing the approaching train; also there was a grade which the plaintiff had to go up in going on the crossing, and this grade prevented the lights on the automobile from showing the train of cars on the pass track, the cars at the crossing being what are termed flat cars, and not tall enough to be seen under the existing conditions until the plaintiff was on the main line, according to the testimony in behalf of the plaintiff, and that the plaintiff, as he testified, when he observed that the crossing was blocked, tried to back his automobile off of the track, but before he could do so was struck by the incoming train of the defendant, Atlantic Coast Line Railroad Company.

In our opinion, the jury might reasonably conclude from this testimony, which may be considered apart from the alleged willful acts of the defendants, Johnston and Glaus, that there were other acts of commission and omission on the part of the defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company, which were willful or of such a gross or reckless nature as to amount to willfulness upon which punitive damages could be based.

Therefore, the verdict for punitive damages, as we view the case, should not have been set aside. In support of this view we call attention to the following cases: *Durst v. Southern Railway Company*, 130 S. C., 165, 125 S. E., 651; *Howell v. Southern Railway Company*, 114 S. C., 31, 102 S. E., 856.

It is, therefore, the judgment of this Court that the exceptions of the defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company, be overruled, that the exceptions of the plaintiff be sustained, and that the plaintiff have leave to enter up judgment against the defendants, Atlantic Coast Line Railroad Company and Camp Manufacturing Company, for the full amount of the verdict rendered by the jury.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran (dissenting): I shall discuss this appeal from these angles only:

(1) So far as the Coast Line is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of the railroad company in the matter of signaling for the crossing, the plaintiff was guilty of such gross contributory negligence as bars his recovery.

(2) So far as the Coast Line is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of the railroad company in the acts charged other than the signaling for the crossing, the plaintiff was guilty of such ordinary negligence as bars his recovery.

(3) So far as the Camp Company is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of that company in the acts charged, the plaintiff was guilty of such ordinary negligence as bars his recovery.

(4) So far as the Camp Company is concerned, assuming the negligence of that company in the acts charged, its delicts in these respects were not and could not have been the proximate cause of the collision between the railroad company's train and the automobile driven by the plaintiff.

(5) The Circuit Judge was right in striking punitive damages from the verdict.

I. *So far as the Coast Line is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of the railroad company in the matter of signaling for the crossing, the plaintiff was guilty of such gross contributory negligence as bars his recovery.*

The undisputed facts from the mouths of *the plaintiff and his witnesses,* appear as follows:

The detailed circumstances of the collision will be best understood by reference to the diagram in the *Miller case*, 140 S. C., at page 156, 138 S. C., 675. It appears that the Atlantic Coast Line Railroad Company (hereinafter referred to as the Coast Line) operated its trains upon double tracks, which ran practically north and south at the point in question; the track upon which northbound trains operated being the extreme eastern. track. Near and parallel therewith, to the west, was the track upon which southbound trains were operated, the eastern rail of which was about eight feet from the western rail of the northbound track. To the west of the southbound main line, and about eight feet from it, was a side track serving the station depot. The space between the rails of each of the two main line tracks was four feet eight and a half inches; so that the space between the eastern rail of the northbound main line and the eastern rail of the side track was approximately 25 feet. These three parallel tracks crossed the principal street in the town at right angle.

In the evening of December 19, 1922, the date of the collision, a logging train composed of several box cars and flat cars, which belonged to the defendant, Camp Manufacturing Company (hereinafter referred to as the Camp Company), and was being operated by the defendant, Arthur Pulley, engineer, backed into the side track from the north, for the purpose of loading certain freight then in the depot into one of the box cars. The logging train had stopped north of the street crossing and entirely clear of it, Pulley, the engineer, inquired of Clintworth, the station agent of the Coast Line, for the freight, and was directed by him to back the train until the box car into which the freight was to be loaded was opposite the door of the warehouse, and was told by him that he was permitted under the law to block the crossing with the flat cars at the end of the train for ten minutes. Pulley proceeded to follow these directions, and, while the

freight was being loaded, the flat cars blocking the crossing, the collision occurred.

The movements of the plaintiff converging to the tragedy were as follows: The plaintiff and a young man by the name of Miller, each traveling for a grocery house in Charleston, had engaged a room in St. Stephens at a Mrs. Locklear's on the west side of the railroad about ninety feet from the side track. Every Tuesday night they would meet and stay together in this room. On this particular Tuesday, Miller had left Charleston in the morning on his usual trip, and had gone some three miles out of the city, when his automobile stopped. The plaintiff, Pinckney, overtook him on a similar mission, traveling in a Ford roadster. Miller joined Pinckney. They traveled north together, Pinckney operating his car, and reached the vicinity of St. Stephens about dark. About one-half mile from the station at St. Stephens, the road traveled by them crossed the railroad from west to east. Pinckney testified that he stopped his car and looked for trains; that he saw a light up at the depot, which appeared to be stationary; that they then crossed the track safely and proceeded along the road parallel with the railroad some 350 feet to the store of one Shuler; that they stopped for a few minutes at Shuler's store, and then resumed their journey up the same street toward the street crossing. The night was dark, misty and very cold; the street was soft and muddy; the curtain was in place on Pinckney's side of the car, the left, but not on Miller's side; the windshield and isinglass lookout in the curtain on Pinckney's side were both spattered with mud. The approach to the crossing was on a slight upgrade and Pinckney testified that they stopped at the foot of this grade; that he told Miller to look to the right, and that he looked to the left, neither seeing a train; that he could see the lights on the opposite side of the railroad, but did not see the obstructing flat cars until he got on the northbound track; that, when he saw the obstruction, he tried to reverse his engine for

the purpose of backing off the track, when instantly the crash came.

In the case of *Miller v. Atlantic Coast Line Railroad Co.*, 140 S. C., 123, 138 S. E., 675, a companion case to the one at bar, in my dissenting opinion, I insisted that the Court should either follow or overrule the well-considered cases of *Cable Piano Co. v. Southern Railway Co.*, 94 S. C., 143, 77 S. E., 868; *Chisolm v. Seaboard Air Line Railway Co.*, 121 S. C., 394, 114 S. E., 500, and *Osteen v. Atlantic Coast Line Railroad Co.*, 119 S. C., 438, 112 S. E., 352, and other cases along the same line, but the suggestion met with no response.

In the *Cable Piano case* the facts were these: A Negro boy was driving plaintiff's team, drawing a covered piano wagon along a highway which ran close to and parallel with the railroad for three-quarters of a mile and then turned abruptly across the track, the distance from the turn in the highway to the crossing being from twenty to thirty feet. He testified that, on account of the cover of the wagon, he could not see the train, which was approaching from his rear, without leaning out of the wagon, and that he could not hear it because of the noise made by the wagon. The track was straight, and the view unobstructed for at least three-quarters of a mile in both directions. The Court held as follows:

"It necessarily follows that, if the driver had looked, before going upon the crossing, he would have seen the train in time to prevent the collision. The law imposes upon every capable person the duty of observing due care for his own safety, when about to cross a railroad track, which necessarily involves the exercise of his senses. And, while it is ordinarily a question of fact for the jury to say whether, under the circumstances of the particular case, the traveler did exercise such care, when the facts are undisputed and susceptible of only one inference, it becomes a question of law for the Court. *Zeigler v. R. Co.*, 5 S. C., 221; *Edwards*

*v. Railway,* 63 S. C., 271, 41 S. E., 458; *Bamberg v. Railway,* 72 S. C., 389, 51 S. E., 988; *Osteen v. Railway,* 76 S. C., 378, 57 S. E., 196; *Drawdy v. Railway,* 78 S. C., 379, 58 S. E., 980; *Griskell v. Railway,* 81 S. C., 193, 62 S. E., 205. In this case plaintiff's driver did not observe the slightest care for his own safety, or that of the property in his custody, and the failure to observe such a slight precaution as to look for approaching trains, before driving upon the crossing, was gross negligence. The evidence warrants no other inference than that his failure to look was the sole cause of the accident, or at least, a proximate contributing cause. Therefore, defendant's motion to direct the verdict should have been granted."

The *Cable Piano case* has been reaffirmed in the following cases: *Dix v. Atlantic Coast Line Railroad Co.,* 98 S. C., 492, 82 S. E., 798; *Callison v. Charleston & W. C. R. Co.,* 106 S. C., 123, 90 S. E., 260; *Gibson v. Atlantic Coast Line Railroad Co.,* 110 S. C., 331, 96 S. E., 519; *Wideman v. Hines,* 117 S. C., 516, 109 S. E., 123; *Osteen v. Atlantic Coast Line Railroad Co.,* 119 S. C., 438, 112 S. E., 352; *Bain v. Northwestern Railroad Co.,* 120 S. C., 370, 113 S. E., 277; *Chisolm v. Seaboard Air Line Railway Co.,* 121 S. C., 394, 114 S. E., 500.

In the *Osteen case* it was decided by the Court *en banc* (quoting syllabus in 112 S. E. [119 S. C., 438]):

"If a truck driver attempted to cross immediately in front of an approaching train, although he saw the train, or by exercising the slightest degree of care could have seen and heard it, and to a person of ordinary prudence such an attempt to cross was obviously dangerous, reckless, or wanton, he was guilty of gross contributory negligence, recklessness, and wantonness *as a matter of law."* (Italics by the Court.)

The rule as laid down in the *Chisolm case* is as follows:

"On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight

and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective. This is merely a statement in the concrete of the fundamental principle of the law of negligence that — 'Ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding peril.' 20 R. C. L., 113.

"Applied, as it must be, in connection with the rule next stated, it is in accord with the settled law of this jurisdiction. *Mack v. Railroad Co.,* 52 S. C., 340, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Edwards v. Railway Co., supra* [63 S. C., 271, 41 S. E., 458]; *Bamberg v. Railroad Co.,* 72 S. C., 389, 51 S. E., 988; *Drawdy v. Railroad Co.,* 78 S. C., 374, 58 S. E., 980; *Osteen v. Railway Co.,* 76 S. C., 368, 57 S. E., 196; *Cable Piano Co. v. Railway,* 94 S. C., 143, 77 S. E., 868."

In *Southern R. Co. v. Priester (C. C. A.)* 289 F., 945, in an opinion by Judge Woods, at one time a distinguished member of this Court, the Court said:

"The presumption is in favor of due care by a traveler at a crossing because his safety is involved. There is no hard and fast rule of law that under all circumstances due care requires a traveler to look and listen before going on a railroad crossing. But it is well settled that when the railroad company has done nothing to allay his sense of danger, and there are no extraordinary conditions sufficient to distract the attention of a man of ordinary prudence and self-possession from the duty of taking precaution, a traveler will be held guilty of contributory negligence, as a matter of law, when the evidence shows affirmatively beyond dis-

pute that he walked or drove his vehicle on a crossing without taking any precaution whatever to ascertain if a train was approaching. [*Chicago, R. I. & P.*] *Railroad Co. v. Houston,* 95 U. S., 697, 24 L. Ed., 542, and numerous cases cited under it in Rose's Notes; *Dernberger v. B. & O. Ry. Co.* (4th Cir.), 243 F., 21, 155 C. C. A., 551; *U. S. Director General of Railroads v. Zanzinger* (C. C. A., 4th Cir.), 269 F., 552 and authorities cited; *Payne v. Blevins* (C. C. A.), 280 F., 310; *Bush v. B. & O. Ry. Co.* (C. C. A., 4th Cir.), 288 F., 845 (filed March 30, 1923).

"The federal case apparently most like that before us is *Northern Pacific Ry. v. Freeman,* 174 U. S., 279, 19 S. Ct., 763, 43 L. Ed., 1014. There it was held there was no question for the jury, because the undisputed evidence showed that the traveler who was killed took no precaution before going on the crossing. The South Carolina Court, in construing and giving effect to the state statutes above cited, has held to the same rule, namely, that although those in charge of the train be guilty of negligence or recklessness according to the circumstances, yet the traveler is guilty of gross negligence, and cannot recover if, without excuse, he takes no precaution, when any precaution would have warned him before going on the track and prevented the injury. *Cable Piano Co. v. Southern Ry. Co.,* 94 S. C., 143, 77 S. E., 868; *Drawdy v. Atlantic Coast Line Ry. Co.,* 78 S. C., 374, 379, 58 S. E., 980; *Osteen v. Atlantic Coast Line Ry. Co.,* [119] S. C., [438], 112 S. E., 352, 360; *Bain v. Northwestern R. Co.* [120] S. C. [370], 113 S. E., 277; *Chisolm v. Seaboard Air Line Ry. Co.,* [121] S. C., [394], 114 S. E., 500. Indeed Section 3222 of the South Carolina Code of 1912 itself, by the strongest implication, provides that, even if the signals are not given, a traveler cannot recover if his own gross negligence has contributed to the injury."

This has been followed by the most recent case from the Supreme Court of the U. S., *B. & O. R. Co. v. Goodman,*

275 U. S., 66, 48 S. Ct., 24, 72 L. Ed.—, which is in exact accord with the *Cable* and other South Carolina cases cited above. The entire opinion by Justice Holmes is as follows:

"This is a suit brought by the widow and administratrix of Nathan Goodman against the petitioner for causing his death by running him down at a grade crossing. The defense is that Goodman's own negligence caused the death. At the trial the defendant asked the Court to direct a verdict for it, but the request and others looking to the same direction were refused, and the plaintiff got a verdict and a judgment which was affirmed by the Circuit Court of Appeals. 10 F. (2d), 58.

"Goodman was driving an automobile truck in an easterly direction and was killed by a train running southwesterly across the road at a rate of not less than 60 miles an hour. The line was straight but it is said by the respondent that Goodman 'had no practical view' beyond a section house 243 feet north of the crossing until he was about 20 feet from the first rail, or, as the respondent argues, 12 feet from danger, and that then the engine was still obscured by the section house. He had been driving at the rate of 10 or 12 miles an hour, but had cut down his rate to 5 or 6 miles at about 40 feet from the crossing. It is thought that there was an emergency in which, so far as appears, Goodman did all that he could.

"We do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and

get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in *Flannelly v. Delaware & Hudson Co.,* 225 U. S., 597, 603, 32 S. Ct., 783, 56 L. Ed., 1221, 1222, 44 L. R. A. (N. S.), 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See *Southern Pacific Co. v. Berkshire,* 254 U. S., 415, 417, 419, 41 S. Ct., 162, 65 L. Ed., 335, 337, 338.

"Judgment reversed."

In *Atlantic Coast Line R. Co. v. McLeod* (C. C. A.), 11 F. (2d), 22, the Court said:

"Plaintiff's testimony that as he approached the crossing he looked and listened for the train is not sufficient to carry the case to the jury. The testimony clearly shows that, if he had looked, and listened immediately before going upon the track, he must necessarily have both seen and heard the train, and we conclude that, if he did in fact look and listen when approaching the crossing, he must have done so some distance away, and not immediately before going upon the track as he should have done. If we regard the statement of plaintiff as meaning that he looked and listened immediately before going upon the track, and that he did not see or hear the train at that time, the testimony is so repugnant to the undisputed physical facts that neither the Court nor the jury could, without stultifying themselves, concede to it any probative value whatever. Moore on Facts, Par. 321. If he had used his senses, he could not have failed both to hear and to see the oncoming train. If he omitted to use them, and walked carelessly upon the track, he was guilty of culpable negligence, and so far contributed to his injury

as to deprive him of any right to complain of another. [*Chicago, R. I. & P.*] *Railroad v. Houston,* 95 U. S., 697, 24 L. Ed., 542."

In *Delaware & H. Co. v. Nahas* (C. C. A.), 14 F. (2d), 56, the Court said:

"While under general rule it is the province of the jury to determine whether such care has been exercised, it is also a rule that where there is a clear view of the approaching train and where the plaintiff either looked and did not see, or failed to look, he is, as matter of law, guilty of contributory negligence and not entitled to have that question go to the jury."

In *Farley v. Norfolk & W. R. Co.* (C. C. A.), 14 F. (2d), 93, the Court said:

"And, in this connection, the defendant relies upon the well-established rule that it is the duty of a traveler along a street or highway to look and listen for approaching trains before going upon a railroad track, and that one who goes upon a track without looking or listening and is injured by an approaching train or cars, which, in the exercise of due care, he should have seen and avoided, will be held guilty of contributory negligence as a matter of law."

In *Bergman v. Northern Pac. R. Co.* (C. C. A.), 14 F. (2d), 580, the Court said:

"Although there is imposed upon railroad companies the duty to sound their whistles or ring their bells as the trains approach the crossings, there is also a duty that the travelers upon the highways exercise ordinary care for their own safety, by the use of their senses of sight and hearing, to prevent collisions. It is a settled rule that one who drives his team or his automobile upon a railroad track at a highway crossing, in front of an approaching train, which he could have seen, had he looked, or could have heard, had he listened, is in law guilty of contributory negligence."

In *Kutchma v. Atkinson, T. & S. F. R. Co.* (C. C. A.), 23 F. (2d), 183, the Court said:

"There are many other cases in this circuit applying the rule that traveler approaching these known places of danger must look and listen at places and at times where and when his senses will give notice of approaching trains; and if he fails to do so and is injured on the crossing by a train whose approach he might have discovered by a reasonable use of his senses, such failure is negligence on his part contributing to the infliction of the injuries which he receives and for that reason his right of recovery is barred."

It will be observed that the plaintiff in this case was in control of the car; his companion, Miller, the plaintiff in the case which has been disposed of, was by his side. I do not think that as to Miller this made any difference, but in the consideration of Pinckney's case there is no room for argument that he was not responsible for Miller's negligence. Pinckney was the owner of the car and at the helm.

The plaintiff was in full possession of his faculties, and familiar with the tracks and crossing in question; he drove a little past the crossing, then turned slightly back and approached the tracks on a diagonal, the car being pointed slightly south of west; within five feet of the first track he states that he stopped and looked, and, changing into low gear, proceeded across the track with one of the fast approaching passenger trains of the Coast Line bearing down upon it, its headlight burning, and with the rush and roar that is incident to the progress of such a train.

The principal witness for the plaintiff (Funk) states that he saw the automobile first about five feet from the track and had started to slow down, but that he thought that they were fixing to stop, but that they went on; that the train approaching was in full view of the witness, and the evidence is that it could have been seen as far as eleven miles down the track. Pinckney himself testified that he stopped to look toward the south, the direction from which the train was coming, about five feet from the track, at which point the approaching train could have been observed for many

miles. This is the only point from which he did look, which fact negatives any weight that might be given to the contention of the plaintiff that there were trees further to the south which might obstruct the view. The evidence is that these trees were no nearer than twelve feet from the track, and, of course, at a distance of five feet from the track would not have obscured his view. The curtain was in place on his side of the car, and the only opportunity to see of which he availed himself in looking toward the south was through an isinglass lookout in the curtain, which was spattered with mud, and which, as he admits, did not afford a clear vision. The windshield was also spattered with mud. This on a misty, rainy night afforded slight opportunity for observation in going ahead. Under these circumstances, fully aware of the position of the tracks, claiming to be aware of the possibility of danger and of the duty of stopping to ascertain whether it was safe to proceed, he drove on the tracks directly in front of the coming train, which, by the slightest exercise of his senses of sight and hearing, he could have discovered.

II. *So far as the Coast Line is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of the railroad company in the acts charged other than the signaling for the crossing, the plaintiff was guilty of such ordinary negligence as bars his recovery.*

As to other acts than signaling for the crossing, the defendant railroad company must be excused from liability upon the *ordinary* contributory negligence of the plaintiff, instead of his *gross* negligence, as required under the signaling statute. If the conclusion is correct that the plaintiff was guilty of gross negligence as above outlined, the greater would include the less.

III. *So far as the Camp Manufacturing Company is concerned, the only inference that can be legitimately drawn from the evidence is that, assuming the negligence of that*

company in the acts charged, the plaintiff was guilty of such ordinary negligence as bars his recovery.

The same argument is applicable to this phase of the case as is indicated in II.

IV. *So far as the Camp Company is concerned, assuming the negligence of that company in the acts charged, its delicts in these respects were not and could not have been the proximate cause of the collision between the railroad company's train and the automobile driven by the plaintiff.*

The prime act of negligence charged to the Camp Company was the obstruction of the crossing; of itself it was impossible that it could have produced a collision between the onrushing engine of the passenger train and the automobile in which the plaintiff was riding. There is obliged to have been between this act of negligence and the collision an intervening and efficient cause. According to the allegation of the plaintiff's complaint, the immediate cause of the collision was the failure of the railroad company to sound the proper warning signal of the approach of the passenger train to the highway crossing. According to the evidence, the immediate cause of the collision was the failure of the plaintiff before entering upon the railroad track to exercise the simplest precaution to ascertain whether he could safely enter upon the railroad track.

In this connection, as relating to the Camp Company, which is not charged with a violation of the signaling statute, and to the issue of proximate cause, it is proper to emphasize the fact that the Camp Company is not obliged to show that the entry of the plaintiff upon the railroad track was an act of *gross* negligence.

If the plaintiff's contention, as alleged in the complaint, be sustained, the signals for the crossing were not given by the railroad company; that failure caused the intestate to enter upon the track without the usual and necessary precautions; it caused it without justifying it, and was an intervening and efficient cause of the collision. If it be not sustained,

as the verdict of the jury exonerating the employees of the railroad indicates, in fact adjudicates, the plaintiff's entry was without the shadow of an excuse itself an intervening, efficient cause, due to his negligence, which surely the Camp Company cannot be held bound to anticipate as a result of its act. So that, between the prime act of negligence, the obstruction of the crossing, and the injury, certainly one or the other, or perhaps both, of two distinct, efficient causes intervened—the failure of the railroad company to sound the warnings, or the entry of the plaintiff upon the railroad track without precaution—neither of which can be said to have been a natural, probable, or reasonably to be apprehended result of the prime act.

In the case of *Foster v. City of Union,* 129 S. C., 257, 123 S. E., 839, the intervening act was that of the father of the plaintiff. The rule should at least be *as strong* where the intervening immediate act was that of the person injured. The immediate cause of the collision being the entry upon the railroad track without the necessary precautions, the question resolves itself into this: Was that a result reasonably to be apprehended by the Camp Company under the circumstances?

To characterize the obstruction of the crossing, therefore, as the proximate cause of the injury, requires the utmost strain of mental processes to conclude either that the Camp Company should have foreseen that, if it obstructed the crossing, either the railroad company would omit the crossing signals, or that the driver of an automobile, in defiance of all safeguards for his own protection, would drive upon a railroad track, in the face of a train traveling 40 miles an hour, the headlight of which could have been seen for eleven miles down the track. But it is said the absence of lights, or other warning of the presence of the obstructing cars, induced the intestate to enter upon the tracks. Possibly so, and it might have been a perfectly harmless venture; but it did not induce him to enter without reasonable precautions

against what *the presence of the rails* warned him might happen, the coming of a train. Nor did it induce the railroad company to omit giving the statutory signals or other warnings of the approach of the train, which omission the plaintiff claimed, as against the railroad company, was the proximate cause of the injury, and which he had the Circuit Judge to charge that presumptively it was. Nor could the Camp Company reasonably have anticipated that the plaintiff would not avail himself of a perfectly safe space of 25 feet between the northbound track and the side track. track.

V. *The Circuit Judge was right in striking punitive damages from the verdict.*

I do not think that there is a particle of evidence in the case of wanton or willful conduct of either defendant such as to justify the imposition of punitive damages. The case was tried before a level-headed judge, with rare common sense and a passion for justice. He heard the witnesses, was in the atmosphere of the trial, and could see no such evidence. I think that his opinion is entitled to great weight.

Consider the conduct of the Camp Company complained of: That it and its engineer, Pulley, had placed and kept a train of cars across the street obstructing the railroad crossing unnecessarily and for an unreasonable time, and without safeguards, lights, or warning to the public of such obstruction, in violation of law.

Assume that it was guilty of all of these specifications, where is the evidence of willfulness or wantonness? The accident occurred in a very small town, in bad weather, when traveling had practically ceased for the day. In order to make out a case of willfulness, it must have appeared that the crossing was being constantly used and that the Camp Company must have anticipated that a belated traveler would attempt the crossing in the very face of an approaching engine and train.

Consider the conduct of the Coast Line complained of: The allegations of negligence in the operation of the train by the engineer and fireman have been eliminated by the verdict exonerating these defendants. There is left nothing but the charge that it acquiesced in, consented to, and approved of the act of the Camp Company and its engineer in so obstructing the crossing.

I think that the motion of the defendants for a directed verdict should have been granted, and that at the least the remission of punitive damages should be allowed to stand.

The opinion of Mr. Justice Carter declares that there was evidence tending to show that the railroad company provided no lights at the street crossing; that it had no flagman there to warn approaching travelers of the approaching cars; that the Camp Company was operating its train in violation of Section 4898 (Civ. Code 1922), which requires the presence of one flagman on the last car of a freight train. It is a sufficient answer to these suggestions that no such acts of negligence are alleged in the complaint; as to the railroad company, the complaint does not count upon a breach of duty on its part to safeguard life or warn. It only alleges that it acquiesced in, consented to, and approved of the delinquencies charged to the Camp Company through its engineer, delinquencies which the verdict has established did not exist.